UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TIM ROUNDS,<br><br>    Plaintiff,<br><br>vs.<br><br>THE HARTFORD, HARTFORD FINANCIAL SERVICES, INC., and HARTFORD CASUALTY INS. CO.,<br><br>    Defendants. | 4:20-CV-04010-KES<br><br><br>ORDER DENYING MOTION TO DISMISS |

  Plaintiff, Tim Rounds, filed this action alleging common law bad faith and unfair trade practices under SDCL § 58-33-5. Docket 1. Defendant Hartford Financial Services, Inc., moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Docket 12. Rounds opposes the motion. Docket 16. For the following reasons, the court denies the motion to dismiss.

**BACKGROUND**

  Construing the facts in a light most favorable to the non-moving party, Rounds, the facts are as follows:

  Rounds is a resident of Pierre, South Dakota. Docket 1 ¶ 1. Hartford Financial Services Group, Inc., (HFSG) is incorporated in Delaware and has its principal place of business in Connecticut. Docket 13-2 at 1; *see also* Docket 1 ¶ 2. HFSG is "a financial holding company for a group of insurance and non-

insurance subsidiaries . . . that provide property and casualty [insurance], group benefits and investment products to both individual and business customers in the United States[.]" Docket 13-1 at 1.

This case concerns allegations of bad faith and unfair trade practices in the handling of a workers' compensation claim. *See* Docket 1. In July of 2015, Rounds was working as a claims adjuster for Doss & Associates. *Id.* ¶ 6. On July 2, 2015, while working, Rounds lost his footing on a wet metal roof and fell several times. *Id.* ¶¶ 7-8. "Rounds was diagnosed with a left cerebellar stroke caused by a left vertebral artery dissection (VAD)" on July 9, 2015. *Id.* ¶ 10. Rounds underwent various treatments, including being in the hospital for 10 days and undergoing 2 weeks of in-patient rehabilitation. *Id.* ¶¶ 14-15. This treatment and care resulted in medical expenses that were compensable under South Dakota workers' compensation laws. *Id.* ¶ 16.

Rounds notified Doss & Associates of the accident within the time required under South Dakota law. *Id.* ¶ 19. Doss & Associates is insured by Hartford Casualty Insurance Company. Docket 13-3 at 1-4. HFSG is the parent company of Hartford Casualty Insurance. *See* Docket 13-1 at 1-2. After investigating, defendants denied Rounds' claim on November 6, 2015. Docket 1 ¶ 32. Rounds alleges that defendants "failed to conduct a reasonable investigation of the facts and the law required to determine whether compensation was due," and "avoided investigating facts or opinions that might support" compensation. *Id.* ¶¶ 39-40. Rounds also alleges that defendants misrepresented South Dakota law and knew that "the falls at work didn't need

2

to be the only cause of his dissection and stroke, but only needed to be one of the major contributing causes." *Id.* ¶ 26. Rounds relied on defendants' misrepresentations, which "caused Rounds to delay seeking legal assistance to challenge the denial" of his claim. *Id.* ¶¶ 42-47.

## LEGAL STANDARD

A party may move to dismiss a claim for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The court must view the facts in a light most favorable to the party opposing the motion. *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977). To defeat a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of making a prima facie showing that jurisdiction exists. *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591 (8th Cir. 2011). The court may consider not only the pleadings but also affidavits, exhibits, or other evidence attached in support or opposition. *Id.* at 592 (citing *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). "While the plaintiff[] bear[s] the ultimate burden of proof, jurisdiction need not be proved by a preponderance of the evidence[.]" *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003) (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)).

## DISCUSSION

Federal courts may assume personal jurisdiction over out-of-state defendants in a diversity case " 'only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause.' " *K-V Pharm. Co.*, 648 F.3d at 592 (quoting *Dever*, 380 F.3d at 1073). Because South Dakota's

long-arm statute confers jurisdiction to the fullest extent allowed by the Due Process Clause, the evaluation requires only a determination of whether the assertion of personal jurisdiction comports with due process under the Fourteenth Amendment. *See* SDCL § 15-7-2(14); *see also Larson Mfg. Co. of S.D. v. Conn. Greenstar, Inc.*, 929 F. Supp. 2d 924, 926 (D.S.D. 2013) (citing *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)). The Supreme Court has established that a court may only exercise personal jurisdiction over an out-of-state defendant in cases where the defendant has "minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (alteration in original) (internal quotation omitted).

The sufficiency of a defendant's contacts are analyzed under five factors: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). "The first three factors are primary factors, and the remaining two factors are secondary factors." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010). When considering minimum contacts, a court should focus on " 'the relationship among the defendant, the forum, and the litigation.' " *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204 (1977)). A plaintiff's assertion of personal

4

jurisdiction over a defendant in a particular forum must fall into one of two categories: general or specific. *See Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2014).

## I. General Jurisdiction

General jurisdiction permits a court to hear "any and all" claims against a party in a particular forum. *Goodyear*, 564 U.S. at 919. General jurisdiction allows personal jurisdiction over defendants where their contacts with the forum state are not necessarily related to the issue at stake in the lawsuit. *Arden*, 614 F.3d at 794. General jurisdiction over a corporation exists where the corporation's affiliations with the forum are sufficiently "continuous and systematic . . . as to render [it] essentially at home in the forum State[.]" *Viasystems, Inc. v. EMB-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 595 (8th Cir. 2011) (internal quotations omitted).

Here, HFSG's contacts with South Dakota do not rise to a level that is sufficient to confer general personal jurisdiction over it. No facts show HFSG is "at home" in South Dakota. HFSG is not incorporated in South Dakota and does not have its principal place of business in the state. *See* Docket 13-2 at 1. HFSG's contacts with South Dakota do not meet the "high[] due-process threshold" required to assert general jurisdiction. *Viasystems, Inc.*, 646 F.3d at 595. And any contacts of HFSG's subsidiary, Hartford Casualty Insurance Company, cannot be imputed to HFSG for purposes of general jurisdiction. *See Daimler*, 571 U.S. at 136-37. Thus, if personal jurisdiction exists over HFSG, it must be based on specific jurisdiction related to this cause of action.

## II. Specific Jurisdiction

Specific jurisdiction permits a court to assert authority over an out-of-state defendant when the cause of action arises from or relates to the defendant's actions within that forum state. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citing *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1091 (8th Cir. 2008)). Courts may assert specific jurisdiction when the defendant is shown to have purposefully availed itself of the benefits and protections of the forum state, such that the defendant could "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The defendant may not be haled into a forum based on " 'random, fortuitous, or attenuated' contacts," or contacts arising from the unilateral actions of a third party. *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The defendant's intentional conduct must form the contacts to the forum; the plaintiff cannot be the only link between the two. *Id.*

Courts generally do not presume that a parent corporation is liable for the actions of its wholly owned subsidiary. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). There is an exception to this presumption, however " 'where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of [the parent] corporation.' " *Epps*, 327 F.3d at 649 (quoting *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 637 (8th Cir. 1975)). The Eighth Circuit has stated that "piercing the corporate veil, if only to establish jurisdiction over the

6

parent corporation, is a drastic approach authorized only in the most extreme situations[.]" *Lakota Girl Scout Council, Inc.*, 519 F.2d at 637.

Apart from veil-piercing, third-party entities administering insurance claims, along with the entity issuing the policy, can be held responsible for common law bad faith and breaching the duty of good faith and fair dealing. *See Tovares v. Gallagher Bassett Servs., Inc.,* 379 F. Supp. 3d 791, 807 (D.S.D. 2019) (noting "the South Dakota Supreme Court would conclude a third party administrator . . . has a duty of good faith and fair dealing with [an insured company's] workers' compensation claimants[.]" (internal quotation omitted)); *see also Fair v. Nash Finch Co.*, No. 5:11-CV-50005-JLV, 2012 WL 13173043, at *24 (D.S.D. Oct. 30, 2012) (holding "that South Dakota would likely allow a bad faith claim against a third-party administrator when an insurance company [has] a third-party administrator to manage its claims . . . even when there is no privity of contract between the third-party administrator and the insured."). In *Fair*, the court noted that " 'an insured's expectations of good faith handling and ultimate determination of his or her claim for the benefits by the insurer extends no less to an entity that both handles and determines the claim than to the insurer issuing the policy.' " 2012 WL 13173043, at *22 (quoting *Dombroski v. Wellpoint, Inc.*, 879 N.E.2d 225, 237 (Ohio Ct. App. 2007)).

Under this theory, Rounds argues that the evidence presented "makes a prima facie showing that HFSG made and implemented the decision to refuse" Rounds' claim sufficient to warrant personal jurisdiction over HFSG. Docket 16

7

at 2. Rounds points to 8 separate communications from Christy Thomann, the adjuster handling Rounds' claim, including the November 6, 2015 claim denial, which states Thomann is an employee of HFSG in the signature block. *Id.* at 1-2; *see also* Docket 17-1 at 1-9. Rounds argues that this evidence shows that HFSG was the entity that administered, implemented, and made the ultimate decision to refuse Rounds' claim. Docket 16 at 2. These emails, Rounds argues, are sufficient contacts to support personal jurisdiction over HFSG. *Id.* at 6.

HFSG disagrees, arguing that it has not purposefully availed itself of forum benefits in South Dakota. Docket 12 at 6. HFSG argues that Rounds has only presented " 'random, fortuitous, or attenuated contacts' " with South Dakota. *Id.* at 8 (quoting *Burger King Corp.*, 471 U.S. at 475). HFSG argues that the unilateral activity of another party or third person, such as Rounds or co-defendant Harford Casualty Insurance, is insufficient for purposes of personal jurisdiction. *Id.* at 6. HFSG also argues that Rounds has only produced scattered references to HFSG as the parent company or HFSG's trade logo, which is also not enough to establish specific jurisdiction. Docket 18 at 4; *see also Viasystems, Inc.*, 646 F.3d at 596 (noting that scattered references or statements on a website merely indicating one company is a parent of another company is insufficient to meet the requisite proof to establish personal jurisdiction).

Here, Rounds has produced more than scattered references on a website indicating that HFSG is a parent company of Hartford Casualty Insurance Company or HFSG's trade logo. Rounds has produced emails in which

8

Thomann consistently identifies herself as a claim specialist for "The Hartford Financial Services Group, Inc." *See* Docket 17-1 at 1-9. And because third-party entities administering insurance claims, along with the entity issuing the policy, can be held responsible for common law bad faith and breaching the duty of good faith and fair dealing, Thomann's emails do not foreclose the conclusion that HFSG made and implemented the decision to refuse payment on Rounds' claim. *See Tovares,* 379 F. Supp. 3d at 807. Thomann's actions are not the "unilateral activity of another party or a third person" but rather are intentional contacts with South Dakota and are sufficient to support specific personal jurisdiction over HFSG. *Burger King Corp.*, 471 U.S. at 474.

HFSG cites to *PKG Contracting, Inc. v. Smith & Loveless, Inc.*, arguing that just last month similar contacts with South Dakota were found to be insufficient to support personal jurisdiction. Docket 12 at 7-8 (citing No. 4:19-CV-04067-LLP, 2020 WL 906760, at *8 (D.S.D. Feb. 25, 2020)). In that case the court found that:

> none of the parties to this action are either incorporated or have principal place of business in the forum state. In looking at the negotiations between the parties and their actual course of conduct, no electronic or telephone conversations appear to have taken place between the parties to this lawsuit in South Dakota, nor did any face-to-face meetings take place in the forum . . . While plaintiff PKG certainly has a connection with South Dakota by virtue of bidding on and being awarded the Project, in South Dakota, it is Defendants' contacts with the forum state that are applicable to this Court's analysis. Considering the totality of the circumstances, the Court concludes that Defendants contacts with this forum are insufficient such that they could reasonably anticipate being hauled into Court in South Dakota in this matter.

2020 WL 906760, at *8. Here, unlike the facts of *PKG Contracting*, Rounds has presented evidence that electronic conversations have taken place between the parties to this lawsuit—conversations in which Thomann consistently identifies herself as an employee of "The Hartford Financial Services Group, Inc." *See* Docket 17-1 at 1-9. As discussed above, if HFSG made and implemented the decision to refuse payment on Rounds' claim, its contacts with the forum are sufficient such that HFSG would "reasonably anticipate being haled into court [here]." *World-Wide Volkswagen Corp.*, 444 U.S. at 297. Thus, there are more contacts with the forum state presented here than in *PKG Contracting*.

Rounds' allegations are not mere speculations or conclusory assertions as to HFSG's contacts with the forum state. Rounds has provided evidence that Thomann presented herself as an employee of HFSG in emails and on LinkedIn. *See* Dockets 17-1, 17-3. And Thomann identifies herself as a claim specialist for HFSG in the ultimate November 6, 2015 denial email sent to Rounds. *See* Docket 17-1 at 1. It is not disputed that Thomann handled Rounds' claim. It may be the case, as Rounds argues, that Thomann was acting on behalf of all defendant companies. And it may be the case that HFSG made and implemented the decision to deny payment of Rounds' workers compensation claim. *See Tovares,* 379 F. Supp. 3d at 807. The court will not make a determination as to whether HFSG made and implemented the decision to deny payment of Rounds' claim, or whether the corporate veil must be pierced, because those ultimate determinations are questions of fact that must be determined by the jury. *See Osloond v. Osloond*, 609 N.W.2d 118, 122 (S.D.

2000) (noting that "[w]hether the corporate veil should be pierce is a question of fact[.]").

Viewing the evidence in the light most favorable to Rounds as the nonmoving party, the court finds that Rounds has met his burden and established a prima facie case of personal jurisdiction at this stage. HFSG has "certain minimum contacts" with South Dakota "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear*, 564 U.S. at 923 (internal quotation omitted). HFSG's contacts with South Dakota are not "random, fortuitous, or attenuated," or the activity of another party or third person. *Walden*, 571 U.S. at 286 (internal quotation omitted). Based on the "nature and quality of [HFSG's] contacts," "the quantity of [these] contacts," and South Dakota's interest "in providing a forum for its residents," there are enough minimum contacts to support specific jurisdiction over HFSG. *Dever*, 380 F.3d at 1073-74 (internal quotation omitted).

## CONCLUSION

Rounds has brought forth sufficient factual allegations to establish a prima facie case of personal jurisdiction over HFSG. Thus, it is

ORDERED that HFSG's motion to dismiss (Docket 12) is denied.

Dated June 11, 2020.

                                                                               BY THE COURT:

                                                             /s/ *Karen E. Schreier*
                                                            KAREN E. SCHREIER
                                                            UNITED STATES DISTRICT JUDGE