UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| TIM ROUNDS, | ) | CIV. 4:20-CV-4010-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | DEFENDANTS' RESPONSE TO |
| vs. | ) | PLAINTIFF'S MOTION TO COMPEL |
| | ) | DISCOVERY AND MEMORANDUM IN |
| THE HARTFORD; HARTFORD | ) | SUPPORT OF CROSS MOTION FOR |
| FINANCIAL SERVICES, INC.; | ) | PROTECTIVE ORDER |
| and HARTFORD CASUALTY INS. | ) | |
| CO., | ) | |
| | ) | |
| Defendants. | ) | |

## I.    INTRODUCTION

Hartford Casualty Insurance Company, The Hartford and Hartford Financial Services (Group) Inc. (collectively, Hartford)[1] opposes Plaintiff Tim Rounds' Motion to Compel discovery, and Cross-Motions for Protective Order with respect to Plaintiff's intrusive and overbroad discovery.

This "bad faith" lawsuit arises from Hartford Casualty's initial determination that Plaintiff's workers' compensation claim was not compensable. Hartford Casualty's decision was based on its investigation and the information then known to it, which included the absence of a causal relationship between his rare form of stroke and his work inspecting a roof for his employer. Plaintiff's physicians diagnosed the cause of his stroke as idiopathic and could not conclude, even when

---

[1] Hartford Casualty Insurance Company issued the subject workers' compensation policy to Mr. Rounds' employer, Doss & Associates, a company in the business of insurance investigations. Hartford Casualty adjusted Mr. Rounds' workers' compensation claim. The Hartford is a trade name. There is no entity known as "Hartford Financial Services, Inc." Hartford Financial Services Group, Inc. is a holding company. It does not issue insurance policies or adjust insurance claims.

pressed by Plaintiff, that it was probable that his stroke was related to his work. Moreover, when Plaintiff's physicians two years later changed their diagnosis to relate his stroke to his work − albeit based on new factual "assumptions" that differed from the facts Plaintiff had presented to Hartford Casualty and his physicians prior to the denial − Hartford Casualty accepted compensability and has paid Plaintiff all the benefits he is owed to date.

Hartford's Motion and its Opposition to Plaintiff's motion are premised on the following grounds:

First, Hartford opposes the Motion to Compel because the bad faith allegations upon which the discovery is based are without merit. Accordingly, Hartford has concurrently filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56 and incorporates those supporting facts here. *See Nye v. Hartford Accident & Indem. Co.*, 2013 U.S. Dist. LEXIS 85299, at *16 (D.S.D. June 18, 2013) (stating that the proper way to raise an argument that the bad faith allegations upon which discovery is based are without merit is via a dispositive motion). The claim file, produced a year ago, establishes Hartford Casualty's good faith — namely, that there was a reasonable basis for Hartford's claim denial and no knowledge or reckless disregard of the lack of a reasonable basis for the denial. All evidence available at the time of the denial supported its decision that no nexus existed between Mr. Rounds' stroke and his work inspecting the roof. Accordingly, no additional discovery is warranted.

Second, notwithstanding the above, a good portion of the discovery requested by Mr. Rounds is not disputed and is ready for production once a protective order enters to protect confidential, proprietary and personal information. The parties do not dispute that a protective order is warranted, but have not agreed to its form. As addressed in the parties' parallel Cross-Motions to Approve Protective Order,

Hartford moves this Court to impose an appropriate Protective Order to allow reasonable discovery to take place, without waiver of the objections asserted in its discovery responses.

Finally, if this Court reaches the merits of the additional discovery sought, Hartford has objected because it is overbroad, overly burdensome, not relevant and/or not proportional to the needs of this case considering the importance of the issues at stake in the action, the amount in controversy, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  FRCP 26(b)(1).   Moreover, Plaintiffs justification for the discovery based on merely meeting the low threshold of alleging "bad faith," cannot throw open the door to all categories of institutional discovery without regard to where his allegations fall on the spectrum of severity or the needs of this single plaintiff case, especially where his conclusory allegations are demonstrably false.

This case does not justify scorched-earth discovery which has no bearing on the outcome of Hartford Casualty's claim decision.

## II.   FACTS

Hartford incorporates by reference the Statement of Facts in its concurrently-filed memorandum in support of its motion for summary judgment.

In sum, this lawsuit and dispute arise from Mr. Rounds' worker's compensation claim, submitted on July 16, 2015, for a rare (1 in 100,000) Vertebral Artery Dissection (VAD) stroke.  His stroke was initially mis-diagnosed as presenting symptoms consistent with ordinary headache, or later allergies and vertigo.  Ultimately his physicians diagnosed a VAD stroke.   Mr. Rounds eventually came to contend that the stroke had been caused by the motion of slipping on the roof  – without actually falling or hitting his head – while he was

inspecting the roof on July 2, 2015, while on his job as an insurance adjuster. However, given the absence of an actual fall or traumatic event, Mr. Rounds' doctors could provide no opinion or diagnosis of a probable nexus between his work on the roof and the VAD stroke. Hartford Casualty transparently and patiently worked with Mr. Rounds in reviewing his description of his activity on the roof − which he also provided to his doctors − and all medical information that was available. But given the lack of any causal relationship to work–related activity, Hartford Casualty had no choice but to find the claim was not compensable in November 2015.

Then, almost two years later, Mr. Rounds' attorney presented his doctors with new, never-before-presented "assumptions" that Mr. Rounds had traumatically fallen multiple times while conducting the roof inspection. Based upon this "new" information, the doctors changed their opinion to state the stroke had likely been caused by his work-related activity. Plaintiff then filed a petition with the Department of Labor. Hartford considered the new information and accepted the compensability of Mr. Rounds claim. Nonetheless, Mr. Rounds filed this bad faith lawsuit in January 2020, incorrectly alleging that Hartford knew there was a basis for compensability at the time the claim had been denied in November 2015 and that it disregarded this information. As set forth in Hartford's concurrently-filed Motion for Summary Judgment, Plaintiff's bad faith allegations are shown to be without merit.

Counsel for Hartford has in good faith attempted to resolve the issues presented in this Motion. Attached to the Maloney Declaration ("Maloney Decl.") as Exhibit D is the 47-page letter to Plaintiff's counsel, dated December 21, 2020, responding to each of the discovery issues raised by Plaintiff. Many of the specific

discovery requests addressed in this brief are identical to the issues addressed and discussed in the attached letter.

## III.   ARGUMENT

Hartford does not dispute the case law asserted by Plaintiff's or that this District has ordered similar discovery to be produced in other "bad faith" cases based upon the facts and circumstances of those cases.  But just as boilerplate objections to discovery requests are objectionable, so too should this Court be skeptical of boilerplate discovery requests that collect favorable discovery rulings from other cases, which are based upon different facts and circumstances, and combines them into a one-size-fits-all "bad faith" discovery request.  "[W]hether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action."  FRCP 26 advisory committee's note to 2000 Amendments, subdivision b.

As noted in Hartford's concurrent Motion for Summary Judgment, Mr. Rounds' allegations of bad faith turn on what Hartford knew about his claim in November 2015, at the time it initially denied this unique case concerning a rare form of a stroke.  There is simply no evidence that Hartford repeatedly denied benefits without any reasonable basis and with knowledge of a lack of reasonable basis, as required by South Dakota law. *Hein v. Acuity*, 2007 S.D. 40, ¶ 14, 731 N.W.2d 231, 235.  This case is not about the training of adjusters, unreasonable delay, or a pattern or practice of denying similarly situated claims.  Discovery should be limited accordingly to the facts of this case.

## A.   Standard for Scope of Discovery.

FRCP 26(b)(1) states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery

> regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." *Id.* (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1993)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." *Id.* (citing *Cervantes v. Time, Inc.*, 464 F.2d 986, 994 (8th Cir. 1972).

While discovery is broad, it is not limitless. At the time FRCP 26(b) was amended in 2000, the advisory committee clarified that information is discoverable only if it is relevant to the claims or defenses of the case *or* if a showing of good cause is made to expand discovery to the "subject matter" of the case:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.

> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action..... <u>In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.</u>

> The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.... When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

FRCP 26 advisory committee's note to 2000 Amendments, subdivision b (emphasis added).

In 2015, FRCP 26(b)(2) was further amended regarding the proportionality of discovery. Although it has been noted that the proportionality language was not totally new[2] and had previously been present in subsection (c), the rule was changed for a reason: The amendment was meant "to reflect the recognition of proportionality in Rule 26(b)(1)" and to "restore proportionality as an express component of the scope of discovery[.]" Advisory Committee Notes (2015 Amendment). The 2015 amendment "crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary (Dec. 31, 2015), at 6.[3]

It is this "common-sense concept of proportionality" that Hartford urges this Court to consider in denying Plaintiff's overboard discovery requests—to balance Plaintiff's need for relevant information to prosecute his case and the requirement that discovery remain proportional and efficient. "Practical considerations dictate that parties not be permitted to roam the shadow zones of relevance to explore

---

[2] See e.g., *Schultz v. Sentinel Ins. Co.*, No. 4:15-CV-04160-LLP, 2016 US Dist LEXIS 72542, at *16 (DSD June 3, 2016).

[3] Available at http://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf.

matter which does not appear germane merely on a theory that it might become so." *Amcast Indus. Corp. v. Detrex Corp.*, 138 F.R.D. 115, 118 (N.D.Ind. 1991).

Here, Plaintiff's entire "bad faith" theory is based upon Hartford's alleged improper initial denial of compensability based on what it knew at the time. Absent a sufficient showing that there is good cause to move beyond the issues relevant to Plaintiff's workers' compensation claim based on <u>the facts of this case</u> (which Plaintiff has failed to convey in any discussions or conferrals), then the discovery requests are not relevant or proportional to the needs of the case and Plaintiff's motion to compel should be denied.

## B.    Form of Protective Order

Many of Plaintiff's requests are not truly disputed by Hartford, though the scope may be.  Rather, Hartford had previously agreed to produce certain documents subject to Plaintiff's agreement to an appropriate order.  As such, any dispute on those issues, as previously pointed out to Plaintiff back in December 2020 is premature and not yet ripe. Maloney Decl., Ex. D at pp. 1-3; 17, 19, 22, 26, 28, 29, and 37.  The parties agree that a protective order is appropriate and necessary, and these issues are further addressed in the separate briefing related to Plaintiff's Motion to Enforce Form of Protective Order.  Doc. 33-34.

## C.    Production by The Hartford or Hartford Financial Services Group (HFSG).

Plaintiff argues that HFSG must make a separate production of documents because this Court ordered that it be included as a party.  To the extent HFSG has responsive documents, it agrees.  But HFSG cannot produce what it does not have. For instance, the claim file, personnel records, claim handling guidelines, etc, that are the subject of this Motion to Compel, are produced by Hartford Casualty because it is the defendant that issued the subject workers' compensation policy and

that adjusted Plaintiff's claim.  The Hartford is a trade name.  See Doc. 13-1.  It is not an entity so it has no documents to produce.

## D.    Specific Discovery Requests

As a preliminary matter, Hartford is well aware of the tenant that boilerplate objections are disfavored; as a result Hartford went to great lengths to individually address each discovery request.  Hartford does not assert boilerplate objections. Hartford's "General Objections" are asserted to address the instructions and definitions in Plaintiff's discovery requests that are objectionable; for instance, definitions of "you," "Hartford" or "Hartford Fire," which include entities beyond the named parties and scope of the claims in this lawsuit.  As is clear from the actual discovery responses, Hartford relies upon the objections in the specific responses, not the general objections, and no discovery was withheld based upon the General Objections alone.

Hartford addresses the disputed individual requests and cross moves for protective order as follows:

> **Request for Production No. 7:  The entire personnel files [sic] and human resources files for each person that handled or participated in handling or making decisions regarding any aspect of Tim Rounds' claim, as well as those persons who supervise those individuals or are in the direct chain of command above them, up to the senior-most person in the chain of command with authority over claims. NOTE: you may redact social security numbers, home street addresses, bank account numbers, or personal health information. If you wish to redact other information not listed here, please direct a request to Tim Rounds' counsel and agreement will not be unreasonably withheld.**

Historically, "personnel files" were requested in discovery because that was the description given to records that described how an individual employee

MEMORANDUM IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND CROSS MOTION FOR PROTECTIVE ORDER PAGE 9

performed during any given period, whether there were deficiencies in his or her work that could have affected a particular claim, and whether there may have been other performance-related issues that could bear on handling of a claim.  Hartford recognizes that South Dakota courts have permitted production of personnel files to determine whether there are known performance-related issues concerning a claim handler that may have affected the claim.  Hartford has agreed to provide this same information, which Hartford compiles in an annual report and review known internally as an "annual performance review."

In Response to Request No. 7, Hartford agreed to produce the complete annual performance reviews for Christy Thomann and her supervisor, Kevin Wagenknecht for the years 2015 - 2018, subject to an agreed-upon protective order to resolve the dispute.  Ex. D, p. 18-19.  Ms. Thomann was the claim handler for Plaintiff's claim; Mr. Wagenknecht was her immediate supervisor.  They are the known representatives who made the substantive decisions concerning Plaintiff's claim.  An "annual performance review" documents the claim representative's performance on an annual basis.  It includes kudos, criticism, compliance, compensation and other job-related performance information.

Hartford's agreement to produce the actual claim adjuster's annual performance reviews, and her supervisor's performance reviews, is an appropriate response to this discovery request.  Courts in South Dakota have imposed reasonable limitations to only those directly involved in making claims decisions and their immediate supervisors. "[A]lthough this Court finds Mr. Christensen's request for Ms. Landeen's personnel file and related documents to be relevant, that request is subject to limitation and protection. First, personnel files often contain documents wholly unrelated to job performance or reprimands.  Health care election forms, 401K documents, I-9 and W-2 forms are not relevant to any issue in this

lawsuit." *Christensen v. Quinn*, 2013 U.S. Dist. LEXIS 55341, at *26 (D.S.D. Apr. 18, 2013) *McElgunn v. Cuna Mutual Group, et al*, CIV. 06–5061 (Docket 84) (D.S.D.2007). South Dakota courts recognize that such discovery cannot be unlimited and must be reasonable. See e.g. *Leichtnam v. Am. Zurich Ins. Co.*, No. 5:15-CV-05012-JLV, 2018 U.S. Dist. LEXIS 168697, at *13 (D.S.D. Sep. 30, 2018). South Dakota Courts limit production of personnel files in the same way Hartford has agreed to produce them here. *See Torres v. Beverly Enterprises, Inc., et al,* CIV. 01–5056 (Docket 43) (D.S.D.2002); *Swigart v. Progressive Classic Insurance Company,* CIV. 04–5059, 2005 WL 1378754 at *1 (D.S.D. April 29, 2005) ("6. The personnel files for each employee, manager, supervisor, or other agent of Progressive who was involved in plaintiff's claim...."); *McElgunn v. Cuna Mutual Group, et al,* CIV. 06–5061 (Docket 84) (D.S.D.2007) ("2. Plaintiff has asked for the personnel files of employees who handled her claim.... This request ... is granted subject to the following limitations: first, plaintiff must sign a protective order, and secondly, it is limited to the unredacted personnel files of [named employees] and the immediate supervisor of each person.").

Plaintiff's broad request for the entire personnel file for every unnamed person in the chain of command who "participated" in the claim, is not reasonably tailored to the facts and circumstances of this claim.  First, Hartford has in fact met the request.  Plaintiff has had Hartford Casualty's claim file for over a year now—Plaintiff knows from review of that file that Ms. Thomann and Mr. Wagenknecht were the persons involved in the substantive claim decisions.  Second, Plaintiff offers no good cause to show why it is necessary to produce files for other persons further up "the chain of command," who had no involvement in Plaintiff's claim or its decisions.  Plaintiff's simple argument that "other court's have ordered it" ignores the different individual facts and circumstances of this case.  Plaintiff cites

to *Schultz v. Sentinel Ins. Co., Ltd*, No. 4:15-CV-04160-LLP, 2016 WL 3149686, at *10 (D.S.D. June 3, 2016), for the proposition that "The higher up the chain of command improper intent is found, the greater the likelihood that the defendant's actions were the result of company policy or custom, which has a direct bearing on punitive damages." But that analyses does not apply to the unique 1 in 100,000 circumstances of this claim. As set out in the facts above (and Hartford's Motion for Summary Judgment), there simply could not have been any "company policy or custom" bearing on how to handle a VAD claim, particularly where Plaintiff's treating doctors concluded the cause was idiopathic and, even after being asked for a letter speaking to causation, Plaintiff's work-related activity was only a "possible" cause of the VAD.

> **Request for Production No. 9**: **Documents sufficient to show all compensation paid to any of the individuals described in Request 7. The scope of this Request is January 1, 2010 to January 1, 2018.**

> **Request for Production No. 10**: **All documents made available to inform any of the personnel described in Request 7 of the manner in which they can expect to earn increases in compensation, or the manner in which they are evaluated for compensation. The scope of this request is January 1, 2010 to present.**

> **Request for Production No. 11**: **All documents which would reflect that the amount paid in claims, is or has been considered in any manner when evaluating any of the compensation provided to any of the personnel described in Request 7, whether it be through average claim costs, loss ratios, combined ratios, underwriting profit, or any other metric. The scope of this request is January 1, 2010 to present.**

Through these discovery requests, Plaintiff seeks to compel records of all compensation received by all persons participating in Plaintiff's claim handling, and the methods for calculating those amounts and, specifically, documents showing

how Hartford ties claim payments to compensation (<u>which it does not</u>).  In response, Hartford has agreed to produce the W-2 forms for Ms. Thomann and Mr. Wagenknecht for the three years 2015, 2016 and 2017, once the protective order is in place.[4]  Hartford has also agreed to provide Ms. Thomann's and Mr. Wagenknecht's annual performance reviews for those same years, which also contain performance matrixes upon which compensation is based.

Plaintiff argues additional information is relevant to show how Hartford incentivizes claim decisions and encourages reductions in claim payouts (<u>which it does not</u>).  Plaintiff fails to explain how highly personal and proprietary compensation records could be relevant to show how a claim handler was incentivized to conclude such a unique injury was not work related when his treating doctors at that time stated his stroke was likely not work related.  Plaintiff is simply requesting records because it is part of counsel's boilerplate request for production, because as he says, they are "typically" requested.  Plaintiff fails to argue or show any good cause, or make any attempt to reasonably tailor the request to the needs of this case.  Hartford does not tie compensation to the amount of benefits paid on claims. Wagenknecht Decl., ¶3.  There is nothing to produce. Plaintiff's Motion to Compel Responses to Requests Nos. 9, 10 and 11 should be denied.

## <u>Request for Production No. 12</u>:   All documents relating to goals, targets, or objectives set for any of

---

[4] Plaintiff's argument that Hartford would only produce *redacted* W-2 forms is an argument that has nothing to do with these discovery requests. By way of explanation, early in the case, when the parties were conferring on the motion to amend, Plaintiff sought information regarding who was the claim handler's actual employer.  Hartford agreed at that time to produce their W-2 forms showing they were employed by Hartford Fire Insurance Company.  The salary amounts were redacted by agreement.  See Maloney Decl., Ex. B.  This exchange was separate and unrelated to the current discovery requests and dispute, in which Hartford has agreed to produce the unredacted versions subject to the pending protective order.

the individuals described in Request 7, or for
workers compensation claims in general. The scope
of this request is January 1, 2010 to present.

Request for Production No. 13: All documents
relating to initiatives, programs, or other efforts to
affect average claim costs (indemnity), loss ratios,
combined ratios, or underwriting profit for worker's
compensation claims from January 1, 2010 to
present. This request does not include documents
from individual claim files relating solely to specific
individual claimants. This does not include
documents that are solely related to efforts to
increase sales.

Similar to the prior requests, Requests 12 and 13 seek "financial goal
information" –again, presumably to determine whether the individual workers'
compensation claim handler and workers' compensation companywide loss ratios
are tied to compensation and might somehow incentivize adjusters to deny claims
(which it does not). To the extent Plaintiff seeks records tying compensation to
knowingly withholding claim payments or issuing unwarranted denials, no such
document exists and Plaintiff's motion to compel should be denied.

Once again, the gravamen of Plaintiff's argument is that the requested
information is "routinely" allowed in this District, so it should be allowed in this
case. But Plaintiff makes no attempt to tie goals/targets or the facts of those cases
to the known facts in this case. All of these suits involved acceptance of the claim
followed by denial of portions of a claim *after the insurer received new information
that conflicted with the information it had at the time of acceptance. Schultz v.
Sentinel Ins. Co.,* No. 4:15-CV-04160-LLP, 2016 U.S. Dist. LEXIS 72542, at *2
(D.S.D. June 3, 2016) (originally accepted roof damage claim for payment, but
denied subsequent payment for higher amount); *Nye v. Hartford Acc. & Indem. Co.*,
2013 WL 3107492 (D.S.D. 2013)(dispute over the amount of payments owed
claimant for injuries); *Hill v. Auto Owners Ins. Co.*, No. 5:14-CV-05037-KES, 2015

U.S. Dist. LEXIS 35375 (D.S.D. Mar. 20, 2015) (roof claim with multiple conflicting expert reports regarding the existence and extent of hail damage, only part of which the insurance company paid.).  The claim adjusters in these reported cases analyzed conflicting information and reports and then made a less advantageous decision for the insured or claimant.  Here, the adjuster initially denied the claim based on *the absence of conflicting evidence* concerning Mr. Rounds' stroke and the facts and circumstances of his activity on the roof, but accepted it as compensable after two *doctors agreed* a causal relationship existed.  There were no conflicts or bias in play in this case.  A decision to deny compensability based on the absence of causation between the stroke and a work related activity was *followed by a decision to accept compensability when two doctors found a nexus* (notwithstanding the "new assumptions about what allegedly happened on the roof to Mr. Rounds that they relied upon to change their diagnosis).

The requested discovery is nor reasonably calculated to lead to evidence in this case and should be disallowed.

> **Request for Production No. 14:  All documents used, or available for use by any of the individuals described in Request 7 to assist, or guide them in handling worker's compensation claims or supervising those who handle claims. The scope of this request is January 1, 2010 to present.**

In response to this request, Hartford agreed to produce responsive internal confidential and proprietary claim practices and procedures for handling workers' compensation claims from July 2, 2015- January 1, 2018, subject to the protective order.  While Hartford's position is that its production will be appropriate and satisfy the needs of the case, any present dispute is unripe as Plaintiff has not even seen the production.

Contrary to Plaintiff's assertion, Hartford does not dispute that "claim manuals" may be discoverable.  But, arbitrarily requesting eleven years of "all documents available to handlers" without any limitation as argued by Plaintiff, versus the three years of workers' compensation claim standards and procedures with regard to the workers' compensation claim that was actually handled— should be more than sufficient.  Plaintiff does not address the need for more other than to comment that "similar time frames" have been upheld by other South Dakota courts.  Again, this one-size-fits-all argument fails because it is not based upon the facts of this case.  In fact, claim "manuals" are arguably unnecessary discovery *given the basic facts of this case*—there was no gray area for discretion in making the claim decision.  Plaintiff's treating doctors classified the cause as idiopathic; Hartford Casualty transparently conveyed this information to Plaintiff; Plaintiff very clearly responded that he understood the need to for a causal connection to his work activity, going so far as to state "It is my job to prove there is no other injury [that could have caused the VAD].  Thomann Decl. in support of MSJ, Ex. A at pp. 18-19.  There is no workers' compensation claim standard or procedure that discusses a VAD stroke or to accept it as compensable when the claimant's own doctors have diagnosed it as idiopathic.  Three years of responsive workers' compensation claim standards and procedures with regard to Plaintiff's workers' compensation claim is sufficient discovery based on the facts of this case.

> **Request for Production No. 15:  Documents sufficient to identify all training or educational materials related to handling or supervising workers compensation claims, and made accessible to any of the persons described in Request 7. The scope of this request is limited to documents accessible at any time from January 1, 2010 to present.**

This request mirrors that of the "claim manuals," above.  In response to this request, Hartford has agreed to produce training materials for workers compensation claims courses taken by the claim handler and her supervisor, Christy Thomann and Kevin Wagenknecht, from July 2, 2015 and January 1, 2018, subject to a protective order.  Plaintiff now moves to compel all training materials for an unstated number of additional personnel for eleven years, from 2010 to present, again –simply because courts have "routinely" ordered training materials in bad faith cases.

Plaintiff argues that eleven years of training materials for all undisclosed employees "are relevant to show how the company believes claims should be handled, and to determine the processes followed by claims adjusters."  Given the narrow and undisputed issues in this claim, Plaintiff's argument is meaninglessly vague and not proportional to the needs of the case.  Plaintiff fails to identify what "belief" it is that Hartford could have, other than that work-related injuries are compensable while non-work-related injuries are not compensable, that Plaintiff seeks to discover through such a broad discovery request.  Plaintiff provides no explanation or argument regarding why eleven years of training material would show such a belief where three years would not.  And Plaintiff fails to identify what "processes" Plaintiff believes the adjusters should have followed but did not.  Candidly, this appears to be discovery for the sake of discovery, without any reasoned consideration of the issues, and simply to put the insurance company to the task.  Plaintiff's motion should be denied.

> **Request for Production No. 16**: **Please provide all materials accessible to Christy Thomann or any person supervising her work, at any time during 2015-2017 related to any of the following:**
>     a).    **South Dakota workers' compensation law,**
>     b).    **South Dakota claim handling standards,**

  **c).  Insurer duties in connection with handling South Dakota workers' compensation claims,**

  **d).  South Dakota bad faith law, or**

  **e).  South Dakota unfair claim practices.**

  Again, the dispute centers on the extent of the materials Hartford has already agreed to produce. Although Hartford's response to the request objected to the use of the phrase "all materials" as overbroad and vague, Hartford agreed to produce responsive workers' compensation claim standards, policies and procedures for Christy Thomann and Kevin Wagenknecht subject to the protective order. This request should be moot once the protective order is in place.

  Despite this, Plaintiff moves to compel the documents based upon Hartford's objection to "all materials." Plaintiff makes no effort to explain why it believes there are additional documents Hartford will withhold despite Hartford's assurances it is fully responding to the request. Plaintiff's Motion to Compel is unnecessary and should be denied.

  **Request for Production No. 17: All deposition or trial testimony transcripts of any of your officers, and any of the persons described in Request 7, in any extra-contractual suit arising out of the handling of a worker compensation claim. The scope of this request is January 1, 2010 to present.**

  **Request for Production No. 18: Documents sufficient to identify the names, dates, and venues of each extracontractual suit filed against you, arising out of the handling of a worker compensation claim. The scope of this request is January 1, 2010 to present.**

  In Requests Nos. 17 and 18, Plaintiff seeks all deposition transcripts of all corporate officers and the claim handlers assigned to Plaintiff's claim who have given testimony in any extracontractual workers compensation lawsuit, as well as a list of all extracontractual workers compensation lawsuits. Both requests are for

the eleven years from 2010 to present, involving transcripts and suits in any jurisdiction, and are not otherwise limited in any way.

In response, Hartford has agreed to produce the transcript of a responsive deposition given by Kevin Wagenknecht in 2018 (the only deposition previously given by any claim handler assigned to Plaintiff's claim), and a list of extracontractual workers compensation lawsuits filed against all Hartford entities in South Dakota from 2015 to present.

Plaintiff now moves to compel the transcripts of all Hartford officers and a list of all extracontractual workers compensation cases, nationwide, from 2010 to present. Plaintiff cites to other South Dakota cases without reference to whether the facts were similar, arguing the transcripts "may include" testimony of similar claim handling and the other lawsuits "may be relevant" to show similar behavior. Plaintiff's explanation for how the requested information "may" reveal discoverable information shows the requests to be the fishing expeditions they are. "Mere speculation that information <u>might</u> be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 501 (D.S.D. 2009) (emphasis added).

Essentially, Plaintiff argues that the only similarity necessary to trigger nationwide discovery is that the cases must arise from extracontractual workers' compensation claims. This scope is far too broad and bears no reasonably narrowed description to Plaintiff's 1-in-100,000 injury or the unique nature of Plaintiff's idiopathic diagnosis. Moreover, there are many types of workers compensation cases that would have no bearing on the issues in this case, including temporary disability claims, permanent disability claims, rehabilitation and training claims, and death benefit claims. The broad scope of these requests is precisely what the

MEMORANDUM IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND CROSS MOTION FOR PROTECTIVE ORDER
PAGE 19

Supreme Court had in mind when it warned that the broad scope of discovery had the "significant potential for abuse." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) (Courts have recognized that the broad scope of discovery available under Rule 26 "has a significant potential for abuse."). Further, it is the type of "fishing expedition" the Eighth Circuit has warned against in *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) ("[T]his often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."); *see also In re IBM Peripheral EDP Devices Anti-Trust Litigation*, 77 F.R.D. 39, 41-42 (N.D.Cal. 1977) (holding that overly broad discovery requests were not a "fishing expedition," but an effort to "drain the pond and collect the fish from the bottom").

Plaintiff repeatedly cites to his counsel's earlier case before Judge Viken, *Lyon v. Bankers Life & Cas. Co.*, 2011 U.S. Dist. LEXIS 4702 (D.S.D. Jan. 14, 2011), however, the discovery requests propounded in that case were more narrowly tailored to fit the facts and circumstances of that particular claim, which involved the acceptance of coverage and the later denial of long-term care benefits, medically necessary treatment, functional capacity of the claimant, and the claim handlers' discretionary payment of benefits for such long term care. In that case, Judge Viken determined that the discovery could reveal reasons for when and why a claim handler may make a coverage determination for long-care benefits—a discretionary judgment call that could have gone either way under the facts of that case. In this case, however, Plaintiff makes no similar effort to narrow the request and there is no "when and why" to discover because when a treating physician makes a diagnosis that a stroke is idiopathic, there is no discretionary call to make; there is

no known causation to work-related activity and there simply is no coverage.  It's an up or down call.  On the other hand, *Lyon* involved an accepted claim where issues later developed such as the reduction or discontinuation of disability benefits following an IME,[5] a change in circumstances that warranted a renewed look at the level of care provided,[6] and whether the extent of necessary treatment to an injured back or knee is due to an on-the-job injury or was an unrelated preexisting injury[7] or caused by some other chronic condition.[8]  The "when and why" of those claim decisions has no relation or relevance to a claim involving an idiopathic stroke with no known mechanism of work-related injury and no trauma-related medical diagnosis until years after the stroke, and years after the claim was denied.  The so called "typical" workers compensation case that Plaintiff relies on bares no relation to this case such that relevant information to this lawsuit can be obtained from deposition transcripts and other lawsuits in every state.

Given the lack of relevance for allowing nation-wide discovery of any kind here, and that it is not proportional to the needs of the case considering the importance of the issues, the importance of the discovery in resolving the issues, and that the burden of the proposed discovery outweighs its likely benefit, further discovery should be denied.

> ### Request for Production No. 19:  All documents related to any regulatory investigations or actions involving your handling or processing of workers

---

[5] See, e.g., *Andrews v. Ridco, Inc., Twin City Fire Insurance Company, and Hartford Financial Services Group, Inc.,* Civ. No. 10-1500

[6] *See e.g. Hammonds v. Hartford Fire Ins. Co.,* 501 F.3d 991 (8th Cir. 2007).

[7] *See e.g. Larson v. Hartford Fire Insurance Co.; Trumbull Insurance Co.; Regional Health, Inc.; Rapid City Regional Hospital, Inc.; and Cannon Cochran Management Services, Inc.,* 51CIV19-001082; *Petersen v. Hartford Fire Insurance Co.; Hartford Insurance Co. of the Midwest; Monument Health, Inc., F/K/A Regional Health, Inc., And Cannon Cochran Management Services, Inc.,* Case No. 16CIV20-000012

[8] *Nye v. Hartford Accident & Indem. Co.,* 2013 U.S. Dist. LEXIS 85299 (D.S.D. June 18, 2013).

**compensation claims. The scope of this request is January 1, 2010 to present.**

Like Plaintiff's nation-wide requests for other lawsuits and deposition transcripts, this request for regulatory investigations and actions involving workers compensation claims is unlimited by geographic area, topics reasonably related to this action, or jurisdiction.  Hartford reincorporates its above responses to these issues.

It is Hartford's position that even if relevant, any discovery of regulatory actions relating to this case should be limited to regulatory actions in South Dakota. It is only those regulations that would be at issue in this case.  Regulations in other states, which are different than those in South Dakota, are beyond the scope of any regulations that may have been violated in this case.  Hartford has agreed to produce these South Dakota regulatory investigations.

In an effort to expand the scope of this request beyond the borders of South Dakota, Plaintiff argues that regulatory investigations could include "Market Conduct Investigations" which would reveal the structure and hierarchy of the Hartford companies.  Respectfully, this is a disingenuous argument.  This information is readily available to Plaintiff through other less onerous sources and has in fact been freely discussed between counsel.

The information contained at page 24 of Plaintiff's motion about Hartford Casualty and the Hartford subsidiaries' use of pooling agreements is correct and widely known.  Plaintiff presents the information as if it were difficult to ascertain or closely held—it is not.  Hartford's website, for instance, discusses the fact that its workers compensation insurance is offered, depending on the state and region, by one of the subsidiary "pool" companies of The Hartford Financial Services Group, Inc., which the website lists in full, and which includes Hartford Casualty Insurance Company and Hartford Fire Insurance Company.  The Financial

MEMORANDUM IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND CROSS MOTION FOR PROTECTIVE ORDER
PAGE 22

Information section of the website contains all SEC filings, Quarterly and Financial statements, by-laws, statutory filings and more.

Plaintiff disingenuously argues that his broad request for regulatory matters is necessary to determine who actually employs the adjusters – yet Plaintiff is already in possession of that information. The whole purpose of exchanging the redacted W-2 forms in June 2020 was to show that the adjusters were issued by Hartford Fire Insurance Company. Maloney Decl., ¶3. Hartford has openly and freely provided this information. Discovery involving regulatory actions in other states is unnecessary to achieve plaintiff's stated purposes and disproportionate to the needs of the case.

> **Request for Production No. 23**: **All company newsletters available to any of the worker's compensation claim personnel identified in Request 7 since January 1, 2010.**

This Request suffers from the same overbreadth and vagueness as Plaintiff's other requests, discussed above, and Hartford reincorporates its preceding arguments. In addition, despite Hartford's request for clarification,[9] Plaintiff has refused to clarify what he means by "newsletters available to any of the [claim handlers]." The problem with this request is that Plaintiff has taken the boilerplate language of "newsletters" from dated decisions unrelated to this case without attempting to apply the issues to the facts of this case. "Newsletters" became obsolete with facsimile machines and carbon copies. Contrary to Plaintiff's argument, Hartford also assumed Plaintiff meant newsletters sent to Plaintiff's claim handlers by any Hartford entity.

Taken literally, Plaintiff's request incorporates any electronic communication not only sent to, but *available to*, the claim representatives, regardless of source, not

---

[9] Maloney Decl., Ex. D at p. 36.

limited in any way other than by date, which the workers' compensation claim representatives have never seen, but which are "available" to them on Hartford's website, or the internet generally.  It includes "newsletters" related to property claims, auto claims, liability claims, construction defect claims and more.  It literally would include "newsletters" on any and every conceivable topic, such as about where employees are to park in the parking lot, IT issues, and vacation time.  It would also conceivably include marketing newsletters and emails from law firms and vendors around the country who include claim handlers on automatic mailing lists.  Plaintiff's request is disproportionate to the needs of the case.

So Hartford necessarily had to make a reasonable assumption that Plaintiff requested "newsletters" in the possession of Ms. Thomann or Mr. Wagenknecht discussing the denial of compensability of workers compensation claims in South Dakota during July 2, 2015 and January 1, 2018.  It is largely duplicative of Request No. 16.  There are no such newsletters.[10]

> **Request for Production No. 24**:  **All documents made available to train, guide, or assist any of the individuals described in Request 7 with respect to:**
> > **a.)**    **unfair claims practices;**
> > **b.)**    **good faith or bad faith claim handling;**
> > **c.)**    **wrongful claims handling;**
> > **d.)**    **extra-contractual suits or damages;**
> **The scope of this request is January 1, 2010 to present.**

Although worded differently, this request is essentially for the same information requested in Request No. 16, which Hartford has agreed to provide

---

[10] Had Plaintiff chosen to take depositions, which is the normal discovery procedure to explore these issues prior to moving to compel, Plaintiff would have learned that Hartford does not use newsletters or bulletins to disseminate information about how claims should be handled.  Rather, that information is conveyed to handlers through changes to its claim standards and procedures and periodic training which Hartford has agreed to produce pursuant to Requests Nos. 15 and 16. Decl. of Wagenknecht at ¶4.

subject to the scope argued above.  The same arguments apply here.  Plaintiff's

motion to compel is unnecessary and not yet ripe, or should be denied.

> **Request for Production No. 26:   Any and all documents relating to complaints made to the South Dakota Division of Insurance or its Director involving handling of workers' compensation claims by either defendant or by Hartford Fire or Hartford Accident and Indemnity since January 1, 2010.**

Plaintiff's request is for DOI complaints against Hartford Fire and Hartford

Accident and Indemnity, neither of which are parties to the suit.  Nonetheless, in

what was hoped to be a concession to avoid a dispute, Hartford responded on behalf

of Hartford Fire, Hartford Accident, and Hartford Casualty, affirmatively

representing no responsive documents exist.  Maloney Decl., Ex. D at p. 38.

Plaintiff's Motion to Compel is unnecessary and should be denied.

> **Request for Production No. 28:  Please provide all documents showing your document retention/destruction policies with respect to documents related to workers' compensation claims, or made accessible to worker's compensation claim personnel. The scope of this request is January 1, 2015 to present.**

This is another example of a boilerplate document request that counsel won

in some past case, and has now included in this request despite the fact that this

case does not involve issues of spoliation and no scintilla of evidence, or even

allegation, that there are any documents missing from the claim file.  Plaintiff

argues they are "potentially" relevant because they would show "categories of

documents related to workers compensation."  Plaintiff fails to identify what

"categories" beyond those addressed in this motion could possibly be at issue.

Plaintiff has already received the claim workers' compensation claim file.

Plaintiff's citation to *Collins v. St. Paul Fire & Marine Ins. Co.*, No. 5:15-CV-05047-JLV, 2016 WL 5794722, at *4 (D.S.D. Sept. 30, 2016) does not, as he asserts, overrule objections or hold that document retention policies are automatically subject to production.  Rather, *Collins* at pp. 9-11 discussed a party's responses to interrogatories related to persons most knowledgeable of how defendants kept and maintained records about medical providers and who examined injured workers.  Upon reasonable research, there is no South Dakota District Court case requiring production of document retention policies in the absence of the destruction or spoliation of information actually being at issue.  Plaintiff's motion should be denied.

> **Request for Production No. 29:  Please provide all documents showing any agreement in which any insurance business (other than defendants) may be liable to satisfy all or part of any judgment in this action or to indemnify or reimburse either defendant for payments made to satisfy the judgment. This includes, but is not limited to, liability coverage or reinsurance agreements providing any sort of indemnification to either defendant, or any other Hartford entity, for either contractual or extra-contractual payments.**

Through this request, and FRCP 26(a)(1)(A)(iv), Plaintiff seeks reinsurance agreements or liability policies that would cover or indemnify Hartford Casualty for any award in this matter.  Plaintiff points to a Connecticut Department of Insurance Report from 2017 that refers to "an intercompany reinsurance and pooling agreement."

The circumstances of this case fall outside the scope of FRCP 26(a)(1)(A)(iv). The rule is intended to apply to policies such as commercial general liability policies, or automobile policies, that insure an insured being sued and defended under the liability policy.  By knowing what the liability policy limits are, the

parties can intelligently confer on the policy limits and streamline settlement discussions.  As noted by the Rule 26 Advisory Council:

> Disclosure of insurance coverage will enable counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation. It will conduce to settlement and avoid protracted litigation in some cases, though in others it may have an opposite effect. The amendment is limited to insurance coverage, which should be distinguished from any other facts concerning defendant's financial status (1) because insurance is an asset created specifically to satisfy the claim; (2) because the insurance company ordinarily controls the litigation; (3) because information about coverage is available only from defendant or his insurer; and (4) because disclosure does not involve a significant invasion of privacy.

FRCP 26 advisory committee's note to 1937 amendment.

None of these four factors apply in the context of this extracontractual first party lawsuit.  As noted by the US District Court in Indiana under a similar argument.

> The court finds that even if reinsurance contracts theoretically fall within Rule 26(a)(1)(A)(iv), their production is not required here. First, their production in this case does not fit the purposes the rule promotes. The purpose of Rule 26's requirement to disclose insurance policies that may provide coverage to satisfy a judgment is to allow parties to assess realistically collection of a judgment and tailor their litigation and settlement strategies in light of that information. See Advisory Notes to Rule 26 (1966 Amendment, Subdivision (b)(2)-Insurance Policies) The Insurers contend that there is no issue here whether the Insurers could satisfy a judgment in Cummins's favor. Cummins does not disagree, and relies only on Rule 26's "automatic" insurance policy disclosure rule to advocate production of reinsurance treaties and contracts. Second, the Insurers' contractual relationships with reinsurers are sensitive business matters that the Insurers naturally may not wish even to share with each

> other. Third, the contracts themselves are not relevant to
> coverage or bad faith issues. For these reasons, the burden
> of producing the contracts outweighs any benefit. See Rule
> 26(b)(2)(C)(iii).

*Cummins, Inc. v. Ace Am. Ins. Co.,* No. 1:09-cv-00738-JMS-DML, 2011 U.S. Dist.

LEXIS 4568, at *30-31 (S.D. Ind. Jan. 14, 2011).

Furthermore, to the extent an insurance policy could apply, its deductible is

so high as to make it practically inapplicable to this case.

Additionally, the request for "all documents" is overbroad.  Even if production

were ordered, it should be limited to the declarations page of any such policy subject

to protective order.

The above analysis applies here.  Plaintiff's Motion to Compel any insurance

agreements should be denied.

> **<u>Request for Production No. 30</u>: Please provide copies
> of any agreements between either defendant or any
> other Hartford entity for claim handling or claim
> administration services, including but not limited to
> copies of the amended and restated Services and
> Cost Allocation agreement. The scope of this request
> is limited to agreements effective at any time during
> the years 2015-2018.**

Plaintiff's sole purpose of requesting the claim handling/administrative

services agreement, as expressly stated at page 31 of Plaintiff's motion, is "to

identif[y] the entity that actually handled Rounds' claim."  This exact issue was

resolved a year ago, as part of the parties' conferral back in June 2020, when it was

agreed between counsel that the redacted W-2 forms would be provided to show

which entity handled Plaintiff's claim.  Maloney Decl. Ex.  B, at p. 1, par. 3.  As

shown in the W-2 forms, it was Hartford Fire Insurance Company.  Production of

the claim administration services agreement is unnecessary and not proportional to

the need to show already-known information.  Plaintiff's motion should be denied.

**Request for Production No. 33**: **Please provide copies of the employee handbook(s) issued by the Hartford entity or entities that paid wages to Christy Thomann and any person supervising her work. The scope of this request is limited to the years 2015-2018.**

Hartford claim handlers, including Christy Thomann, are not "issued" or given an "employee handbook" as that phrase is generally and historically understood.  Declaration of Maria Fazzino at ¶4[11].

While it is possible that Hartford electronically maintains materials that could have historically been included in an employee handbook, upon information and belief, this information has already been provided to Plaintiff, or will be provided upon entry of a protective order.  For instance, according to a generic website search, an "employee handbook" usually includes materials such as the company history, mission, and values. [12]  Much of this information is on Hartford's website.

To the extent Plaintiff seeks other materials, Hartford is unable to answer this Request because it was, and remains, unclear what is meant by "employee handbook" or what materials Plaintiff assumes would be in the handbook that he is seeking.  Plaintiff has not provided any further explanation of what is sought.  Plaintiff's motion for further unspecified documents should be denied.

**Request for Production No. 34**: **Please provide copies of all emails or letters sent by Christy Thomann to any person or entity related to her handling of a workers' compensation claim that includes the words "Hartford Financial Services Group, Inc." below her signature block. The scope of this request is limited to emails or letters sent at any time during the period of July 2015 to January 2018.**

---

[11] See Hartford's Response to Plaintiff's Motion for Protective Order
[12] See, e.g., https://www.shrm.org/resourcesandtools/tools-and-samples/how-to-guides/pages/developemployeehandbook.aspx.

Plaintiff asserts this request to purportedly show that Christy Thomann was a representative or employee of HSFG and not Hartford Fire.  In response, Hartford has provided Plaintiff with all emails Ms. Thomann sent in Plaintiff's claim, all of which affix a signature block for Hartford Financial Services Group, Inc. –the holding company for all Hartford entities.  Hartford has *admitted* that Ms. Thomann sent emails with the same a signature block for all of her claims during July 2, 2015- January 1, 2018.  Maloney Decl., Ex. A at 31.[13]  Whether Hartford provides fifty emails or fifty thousand, the result is the same—all of Ms. Thomann's emails contained the HFSG signature block.  It is simply harassing to request additional emails from all other claims she handled when Plaintiff knows full well what they will show, and Hartford has agreed to such.   Moreover, emails from other claims will be time consuming to collect and will undoubtedly contain confidential and private information of other non-parties to this lawsuit.  The request is harassing and not proportional to the needs of the case given Hartford's stipulation.  Plaintiff's Motion to Compel should be denied.

Additionally, fully responding to Plaintiff's request would require Hartford to search for and pull all emails from all claims handled by Ms. Thomann in a three year period.  Because these claims involve other persons' claims and personal information, the production would involve extensive redactions of virtually everything except the signature block.  The production would essentially consist of thousands of pages of redacted emails with only the signature block showing, to prove something that Hartford has stipulated to.  Such a production would take an inordinate amount of time and expense.  Plaintiff's request is disproportionate to

---

[13] It should be noted that by affixing HFSG to her signature block this was not, and was not intended to be, a factual representation or her actual employer, but as a simple indication that she was handling a Hartford Casualty claim, one of a Hartford group of companies, generally.

the needs of the case given the cost and effort necessary to search for and redact emails from claim files other than the Plaintiff's.

Finally, using a particular signature block does not determine whether Ms. Thomann was an employee of Hartford Fire or HFSG.  The emails themselves are of tenuous relevance for purposes of identifying her employer.  Given their tenuous relevance, burden of production and Hartford's stipulation, production of additional confidential emails from other claims are not proportional to the needs of this case.  Plaintiff's motion should be denied.

> **Request for Production No. 36: Please provide copies of all documents that you contend show Christy Thomann was an employee of Hartford Casualty at any time during the years 2015-2018.**

The fact that Plaintiff is actually moving to compel on this request proves the point of Plaintiff's intent to harass and litigate for the sake of litigation.  Hartford has never contended that Ms. Thomann was an employee (as opposed to a representative) of Hartford Casualty.  Hartford has consistently asserted and provided W-2 forms showing that Ms. Thomann was an employee of Hartford Fire. Hartford responded that no responsive documents exist in its written discovery response and in subsequent conferrals.  Maloney Decl., Ex. D at p. 47.  None exist. Plaintiff's motion should be denied.

///

///

///

///

///

# IV.    CONCLUSION

For the reasons stated in Hartford's concurrent motion for summary judgment, this case should be dismissed and the discovery requests now at issue should be denied as moot. Alternatively, once an appropriate protective order is in place, plaintiff's motion to compel should be denied, and Hartford's cross-motion granted, because the discovery sought by Plaintiff should be limited to the proportional needs and actual facts and circumstances of this case.

DATED:  June 30, 2021

MALONEY LAUERSDORF REINER PC

Francis J. Maloney III, *pro hac vice*
1111 E. Burnside, Suite 300
Portland, OR  97214
Telephone: (503) 245-1518

GUNDERSON, PALMER, NELSON & ASHMORE, LLP


By  */s/ Jason M. Smiley*
Jason M. Smiley
PO Box 8045
Rapid City, SD  57709-8045
Telephone: (605) 342-1078

Attorneys for Defendant Hartford