UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TIM ROUNDS,<br><br>                    Plaintiff,<br><br>        vs.<br><br>THE HARTFORD, HARTFORD<br>FINANCIAL SERVICES, INC., and<br>HARTFORD CASUALTY INS. CO.,<br><br>                    Defendants. | 4:20-CV-04010-KES<br><br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART PLAINTIFF'S<br>MOTION TO COMPEL<br><br>DOCKET NO. 27 |

**INTRODUCTION**

This matter is before the court on plaintiff Tim Rounds' complaint alleging bad faith denial of workers' compensation benefits and unfair trade practice violations under SDCL § 58-33-5. <u>See</u> Docket No. 1. Jurisdiction is premised on diverse citizenship of the parties and an amount in controversy in excess of $75,000. <u>See</u> 28 U.S.C. §1332. Now pending is plaintiff's motion to compel defendants to provide discovery responses. <u>See</u> Docket No. 27. Defendants, the Hartford, Hartford Financial Services, and Hartford Casualty Ins. Co. (collectively "Hartford"), oppose the motion. <u>See</u> Docket No. 52. The district court, the Honorable Karen E. Schreier, referred the motion to this magistrate judge for determination pursuant to 28 U.S.C. § 636(b)(1)(A). <u>See</u> Docket No. 89.

## FACTS

Mr. Rounds filed this lawsuit in federal court on January 14, 2020, alleging common law bad faith for Hartford having no reasonable basis for denying his workers' compensation claim, failing to perform a reasonable investigation, and acting with knowledge that it lacked a reasonable basis to deny workers' compensation coverage.  Docket No. 1.  Additionally, Mr. Rounds alleges Hartford is liable for (1) unfair trade practices, specifically under SDCL § 58-33-5, for making representations concerning the availability and conditions of coverage and (2) harm resulting from its acts, including attorney fees for unreasonable and vexatious conduct, pursuant to SDCL §§ 58-12-3 and 58-33-46.1.  Id.

This dispute arises from Mr. Rounds' workers' compensation claim, submitted on July 16, 2015.  See Docket No. 52, p. 3.  Mr. Rounds worked as an insurance adjuster for Doss & Associates, an independent adjusting firm in Watertown, South Dakota.  Docket No. 1, p. 1.  On July 2, 2015, Mr. Rounds climbed onto a wet metal roof to inspect it in connection with a damage claim. Id.  Due to wet conditions, he slipped.  Id. at p. 2.  The parties dispute whether Mr. Rounds fell when he slipped or if he landed on his hands and knees several times.  See Docket Nos. 28, 52.  Over the course of several days following the event at issue, Mr. Rounds developed headaches, nausea, vomiting, and left-sided weakness causing him to seek medical attention.  Docket No. 1, p. 2.  On July 9, 2015, Mr. Rounds was diagnosed with a left cerebellar stroke caused by a left vertebral artery dissection ("VAD").  Docket Nos. 1, 28, 52.  VAD is a

2

small tear in the inner wall of an artery that can cause blood clotting and lead to stroke.  Docket No. 1, p. 2.

The parties also dispute what the initial physicians told Mr. Rounds was the cause of his VAD.  Mr. Rounds alleges the physicians told him the trauma causing a VAD usually occurs three to five days before onset of symptoms. Docket No. 28, p. 2.  Mr. Rounds alleges he told Hartford's claim personnel that the only incident he encountered in the days leading to the stroke was slipping on the metal roof during his inspection.  Id.  Hartford alleges that, given the absence of an actual fall or traumatic event, Mr. Rounds' doctors could provide no opinion or diagnosis of a probable nexus between his work on the roof and the VAD stroke.  Docket No. 52, p. 4.

Mr. Rounds alleges that Hartford's claim adjuster, Christy Thomann, did not ask any of Mr. Rounds' physicians for medical opinions under the South Dakota standard for awarding workers' compensation benefits.  Docket No. 28, p. 2.  Instead, Mr. Rounds alleges Ms. Thomann went through the medical records and located a treating neurologist's remark that it was *possible* the VAD was caused by Mr. Rounds slipping on the roof and another comment from a family practice doctor saying the cause was *idiopathic*, or unknown.  Id. at pp. 2-3.  In turn, Mr. Rounds alleges this is what led Ms. Thomann to deny Mr. Rounds' claim.  Id.

In opposition, Hartford alleges that they "transparently and patiently worked with Mr. Rounds in reviewing his description of his activity on the roof—which he also provided to his doctors—and all medical information that

3

was available." Docket No. 52, p. 4.  Further, Hartford alleges that, given the lack of any causal relationship to work-related activity, they had no choice but to find the claim was not compensable in November 2015.  Id.

Mr. Rounds' attorney wrote to treating physicians asking for their views as to whether Mr. Rounds' alleged falls at work were a major contributing cause of his artery dissection and stroke.  Docket No. 1, p. 6, ¶ 48.  Dr. Bassell Salem, a treating neurologist, gave a written statement saying the alleged falls at work were a major contributing cause of Mr. Rounds' artery dissection and stroke.  Id. at ¶ 49.  Additionally, on May 30, 2017, Mr. Rounds' other treating neurologist, Dr. Sharma, wrote, "[B]ased on the patient's exam and MRI changes, it is more than likely that the patient's stroke happened when he was working on the roof."  Id. at ¶ 51.  On June 1, 2017, Hartford was provided with Dr. Sharma's and Dr. Salem's opinions.  Docket No. 1, p. 6, ¶ 52.

Hartford alleges the information that Mr. Rounds' counsel provided to his treating physicians was "new, never-before-presented 'assumptions' that Mr. Rounds had traumatically fallen multiple times while conducting the roof inspection."  Docket No. 52, p. 4.  Hartford alleges this "new" information that counsel provided is what led the physicians to conclude the stroke had likely been caused by his work-related activity.  Id.

On June 27, 2017, Mr. Rounds' counsel asked Hartford to retract their denial of workers' compensation benefits and pay the claim.  Docket No. 1, p. 7, ¶ 56.  Mr. Rounds alleges that Hartford did not respond to the request to retract the denial of benefits.  Id., ¶ 57.  On July 17, 2017, Mr. Rounds filed a

petition for hearing with the Department of Labor to enforce his right to payment of workers' compensation benefits.  Id., ¶ 58.  Hartford considered the new information and accepted the compensability of Mr. Rounds' claim, admitting that "[c]laimant suffered a left cerebral stoke caused by a left vertebral artery dissection arising out of and [sic] the course of employment with employer."  Docket Nos. 1, p. 7, ¶ 62; 52.

On May 11, 2020, Mr. Rounds served 36 document requests on Hartford.  Docket No. 28, p. 1.  Hartford objected and refused to comply with some of these document requests and now Mr. Rounds moves to compel discovery for 21[1] of those requests.  Id.  Hartford opposes this motion to compel because: (1) the bad faith allegations upon which the discovery is based are without merit, (2) a good portion of the discovery requested is not disputed and is ready for production once a protective order is entered, which it has, and (3) if the court reaches the merits of the additional discovery sought, defendants object because it is overbroad, overly burdensome, and not relevant or proportional to the needs of the case.  Docket No. 52, p. 3.  The matter is now fully briefed and ripe for a decision.

## DISCUSSION

### A.    Standards Governing Discovery

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

---

[1] On page 1 of Mr. Rounds' brief in support of his motion to compel he indicates that he is moving to compel discovery for 22 requests.  Docket No. 28, p. 1.  After review of the briefs, only 21 requests are discussed.

> *Scope in General.* Unless otherwise limited by court order, the
> scope of discovery is as follows: Parties may obtain discovery
> regarding any nonprivileged matter that is relevant to any party's
> claim or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in the action, the
> amount in controversy, the parties' relative access to relevant
> information, the parties' resources, the importance of the discovery
> in resolving the issues, and whether the burden or expense of the
> proposed discovery outweighs its likely benefit. Information within
> the scope of discovery need not be admissible in evidence to be
> discoverable.

See FED. R. CIV. P. 26(b)(1).

If a party fails to respond to a proper request for discovery, or if an

evasive or incomplete response is made, the party requesting the discovery is

entitled to move for a motion compelling disclosure after having made a good-

faith effort to resolve the dispute by conferring first with the other party. See

FED. R. CIV. P. 37(a).

The scope of discovery under Rule 26(b) is extremely broad. See 8

Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2007 (3d ed.

Oct. 2020 update). The reason for the broad scope of discovery is that

"[m]utual knowledge of all the relevant facts gathered by both parties is

essential to proper litigation. To that end, either party may compel the other to

disgorge whatever facts he has in his possession." Id. (quoting Hickman v.

Taylor, 329 U.S. 495, 507-08 (1947)). The Federal Rules distinguish between

discoverability and admissibility of evidence. FED. R. CIV. P. 26(b)(1), 32, and

33(a)(2) & (c). Therefore, the rules of evidence assume the task of keeping out

incompetent, unreliable, or prejudicial evidence at trial. But these

considerations are not inherent barriers to discovery.

"Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy . . . encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the World Life Ins. Soc'y, No. 8:03CV165, 2007 WL 1217919, at *1 (D. Neb. Mar. 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required."  Woodmen of the World, 2007 WL 1217919, at *1 (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe[,] with a reasonable degree of specificity, the information they hope to obtain and its importance to their case."  Woodmen of the World, 2007 WL 1217919, at *1 (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery.  See FED. R. CIV. P. 26(b)(1).  Additionally, the court may limit the frequency and extent of discovery.  See FED. R. CIV. P. 26(b)(2); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All

discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

## B.    Individual Discovery Requests and Objections

### 1.    Request for Production No. 7

This request seeks:

> The entire personnel files and human resources files for each person that handled or participated in handling or making decisions regarding any aspect of Tim Rounds' claim, as well as those persons who supervise those individuals or are in the direct chain of command above them, up to the senior-most person in the chain of command with authority over claims.  NOTE: you may redact social security numbers, home street addresses, bank account numbers, or personal health information.  If you wish to redact other information not listed here, please direct a request to Tim Rounds' counsel and agreement will not be unreasonably withheld.

See Docket 28, p. 4.

In its first response to Mr. Rounds' request for production, Hartford objected to this discovery request because: (1) the phrase "handled or participated in handling or making decisions" [regarding any aspect of Tim Rounds' claim] is undefined, vague and ambiguous; (2) the request invades the privacy of claim personnel; (3) plaintiff fails to *specifically name* the persons whose files are requested; (4) it is overbroad in time because it includes documents created before Mr. Rounds' claim began and after Hartford agreed to pay the claim; (5) the information sought is irrelevant; (6) seeks files of persons not directly

8

involved in handling the claim (chain of command personnel); (7) the request is not proportional to the needs of the case or the importance of issues at stake; (8) subject to each of these objections, and entry of a protective order, Hartford agrees to produce only the annual performance reviews for Christy Thomann and Kevin Wagenknecht for the years 2015-2018; (9) Hartford says, "No responsive documents can be produced by 'The Hartford' or HFSG because 'The Hartford' is not a legal entity and HFSG is not an insurance company and did not adjust Plaintiff's workers' compensation claim." Docket No. 28-1. These objections are without merit.

Here, the request for the personnel files of all those handling Mr. Rounds' claim, and all those in the chain of command that supervise those individuals, is relevant, and is not vague or ambiguous. Personnel files have routinely been held proper subjects of discovery in this district in bad faith cases from the claims handler up to the head of the claims department. Hill v. Auto Owners Ins. Co., No. 5:14-CV-05037-KES, 2015 WL 1280016, at *8-9 (D.S.D. Mar. 20, 2015). In Hill, this court rejected the insurance company's allegation that discovery should be limited to the claims handler who handled the plaintiff's claim and that employee's immediate supervisor. Id. The limitation that the court in Hill rejected is the exact limitation that Hartford is seeking. See Docket No. 52, p. 10 (Hartford agreed to produce the complete annual performance reviews for Christy Thomann and her supervisor, Kevin Wagenknecht.).

9

Additionally, in <u>Schultz v. Sentinel Ins. Co.</u>, the court approved of a request for personnel files of "all personnel involved with plaintiff's claim and all supervisors in the chain of command above those personnel, up to the head of the claims departments." <u>Schultz v. Sentinel Ins. Co.</u>, No. 4:15-CV-04160-LLP, 2016 WL 3149686, at *10 (D.S.D. Jun. 3, 2016). The <u>Schultz</u> court made this determination based on the premise that incentives and disincentives placed upon claims handlers to handle claims in certain ways are likely to be reflected all the way up the chain of command to those at the head of claims departments. <u>Id.</u> The higher up the chain of command improper intent is found, the greater the likelihood that the defendant's actions were the result of company policy or custom, which has a direct bearing on punitive damages. <u>Id.</u> (quoting <u>Roth v. Farner-Bocken Co.</u>, 667 N.W.2d 651, 666 (S.D. 2003)).

Further, in <u>Nye v. Hartford Acc. and Indem. Co.</u>, the court granted a request for personnel files for each person who handled, reviewed, supervised, and/or audited the plaintiff's claim with defendant, including all persons in the chain of command above these individuals up to the head of the claims department. <u>Nye v. Hartford Acc. and Indem. Co.</u>, Civ. No. 12-5028-JLV, 2013 WL 3107492, at *11 (D.S.D. Jan 15, 2013). In <u>Nye</u>, the court stated, "Personnel files may reveal an inappropriate reason or reasons for defendant's action with respect to plaintiff's claim or an 'improper corporate culture.' " <u>Id.</u> (quoting <u>Signature Dev., LLC v.</u>

10

Mid-Continent Casualty Co., No. CIV. 11-5019-JLV, at *13 (D.S.D. Sept. 18, 2012)).

Hartford states that "[c]ourts in South Dakota have imposed reasonable limitations to only those directly involved in making claims decisions and their immediate supervisors." Docket No. 52, pp. 10-11 (citing Christiansen v. Quinn, No. CIV. 10-4128-KES, 2013 WL 1702040, at *9 (D.S.D. Apr. 18, 2013)). However, the court in Christiansen found that the personnel files and related documents at issue were relevant, subject to limitation and protection. Id. The limitation that the court in Christiansen addresses is different than what Hartford seeks in their objections to Mr. Rounds' motion to compel. In Christiansen, the court made a limitation on the production of the personnel files at issue to prevent the dissemination of confidential information in those personnel files, such as social security numbers and tax documents. Hartford attempts to use this precedent as a shield to protect them from disclosing the personnel files of those beyond just the claim adjuster, Christy Thomann, and her supervisor, Kevin Wagenknecht. This argument is misplaced. Mr. Rounds, in production request no. 7, stated that all social security numbers, home street addresses, bank account numbers, or personal health information may be redacted. Docket No. 28, p. 4. This is the exact type of limitation on discovery production that the court in Christiansen states is necessary.

11

Hartford further opposes the production of this discovery because it is not reasonably tailored to the facts of this claim and Mr. Rounds offers no good cause to show why it is necessary to produce files for other persons up "the chain of command." Docket No. 52, p. 11. This is simply not the case. Mr. Rounds' complaint and motion allege a "pattern of conduct designed to reduce compensation to injured workers, by failing to ask treating physicians for their opinions on the specific questions needed to establish compensability under South Dakota workers' compensation laws." See Docket Nos. 1 & 85. Discovery of upper-level personnel files may shed light on Mr. Rounds' allegations.

Following this court's precedent, Mr. Rounds' motion to compel as to request no. 7 is granted, subject to the redactions indicated in the request. Hartford's request that production be limited to the annual performance reviews of Ms. Thomann and Mr. Wagenknecht is denied.

### 2.    Request for Production Nos. 9, 10, 11

These requests seek:

> No. 9: Documents sufficient to show all compensation paid to any of the individuals described in Request 7. The scope of this request is January 1, 2010 to January 1, 2018.
>
> No. 10: All documents made available to inform any of the personnel described in Request 7 of the manner in which they can expect to earn increases in compensation, or the manner in which they are evaluated for compensation. The scope of this request is January 1, 2010 to present.
>
> No. 11: All documents which would reflect that the amount paid in claims, is or has been considered in any manner when evaluating any of the compensation provided to any of the personnel described in Request 7, whether it be through average claim costs,

> loss ratios, combined rations, underwriting profit, or any other
> metric.  The scope of this request is January 1, 2010 to present.

See Docket No. 28, p. 12.

In its response, Hartford objects to these discovery requests because they are irrelevant, they contain highly personal and proprietary compensation records, the requests are not narrowly tailored, and Mr. Rounds failed to show good cause for the need for the discovery.  See Docket No. 52, pp. 12-13.  Again, these objections are without merit.

Compensation records are highly relevant because compensation is often used to incentivize behavior the company wishes to reinforce and encourage.  See Schultz, 2016 WL 3149686, at *10.  Compensation or incentive plans or programs for claims staff are relevant to the issue of punitive damages.  See Anspach v. United of Omaha Life Ins. Co., Civ. No. 10-5080-JLV, 2011 WL 3862267, at *9 (D.S.D. Aug. 31, 2011) (holding that "whether a particular employee was rewarded financially for denying a certain number or percentage of claims or achieving a particular outcome with regard to claims handling . . . is certainly relevant to [Plaintiff's] bad faith and punitive damages claims").  Bonus programs may provide some evidence of the motivation of claims personnel in evaluating a claim.  Lyon v. Bankers Life and Cas. Co., No. CIV. 09-5070-JLV, 2011 WL 124629, at *10 (D.S.D. Jan. 14, 2011).  Qualifying for a monetary bonus, or other employee incentive, because of the manner in which defendant's employees respond to a

13

claim, is certainly relevant to a bad faith claim.  Id. ("such information

[regarding employee award and financial bonus programs is] . . . relevant

to plaintiff's bad-faith insurance and breach of contract claims . . . ."

(quoting Pochat v. State Farm Mutual Automobile Ins. Co., No. Civ. 08-

2015-KES, 2008 WL 5192427 at *5 (D.S.D. Dec. 11, 2008))).

Applying this precedent, the compensation records that Mr. Rounds

seeks to compel fits squarely within what this court has deemed to be

relevant.

Further, Mr. Rounds has pleaded facts sufficient to show good

cause for this discovery.  Mr. Rounds alleges that compensation and

bonus programs operate as an incentive to reduce workers'

compensation payments.  Docket No. 85, p. 11.  In their response,

Hartford states that they do not tie compensation to the amount of

benefits paid on behalf of claimants.  Docket Nos. 28, 52.  But

Mr. Rounds is under no obligation to accept Hartford's version of the

facts in lieu of discovery.  Schultz, 2016 WL 3149686, at *11.

In response, Hartford has agreed to produce the W-2 forms for

Ms. Thomann and Mr. Wagenknecht for the three years of 2015, 2016,

and 2017.  Docket No. 52, p. 13.  However, these W-2s are redacted to

prevent discovery of the actual compensation paid.  The dollar amount

actually paid to Hartford employees goes to the heart of what Mr. Rounds

seeks in this production request.  Further, no court has held, and

Hartford has not argued, that discovery of compensation records is

14

limited to the claim adjuster and their immediate supervisor.  Therefore, Hartford's request is denied.

Briefly addressing Hartford's argument that these records contain highly personal and proprietary compensation records; the court is satisfied sensitive information subject to the request will be adequately protected by the entry of the protective order.  See Docket No. 88.

Accordingly, Mr. Rounds' motion to compel as to requests nos. 9, 10, and 11 are granted.

### 3.      Request for Production Nos. 12, 13

These requests seek:

No. 12: All documents relating to goals, targets, or objectives set for any of the individuals described in Request 7, or for workers' compensation claims in general.  The scope of this request is January 1, 2010 to present.

No. 13: All documents relating to initiatives, programs, or other efforts to affect average claim costs (indemnity), loss ratios, combined ratios, or underwriting profit for worker's compensation claims from January 1, 2010 to present  This request does not include documents from individual claim files relating solely to specific individual claimants.  This does not include documents that are solely related to efforts to increase sales.

See Docket No. 28, pp. 14-16.

In its response, Hartford objects to these discovery requests because they are irrelevant, the request is undefined, vague, and ambiguous, and Mr. Rounds makes no attempt to tie goals/targets or facts of the cases they cite to the known facts of this case.  Docket No. 52, pp. 14-15.  Again, these objections are without merit.

Documents referring to goals, targets, or objectives for claim payments are relevant to bad faith claims and are discoverable in this District. <u>Lyon,</u> 2011 WL 124629, at *10. Request No. 12 is very similar to a request made in <u>Nye v. Hartford Acc. & Indem. Co</u>. In <u>Nye</u>, the court found that this request was relevant and not overly broad or vague for similar reasons to what Mr. Rounds alleges. <u>Nye</u>, 2013 WL 317492, at *12. Mr. Rounds alleges that this discovery will reveal direct incentives to reduce claim payouts, or the application of indirect pressure by setting goals to reduce loss ratio, combined ratio, or other claim metrics that include claim payments as part of the formula.

Further, claims ratios are inherently tied to bonus programs. <u>Lyon</u>, 211 WL 124629, at *10. In <u>Lyon</u>, the court granted a motion to compel for "[a]ny and all copies of documents referring to . . . loss ratios, or combined ratios." <u>Id.</u> As stated above, this court has held that information regarding employee award and financial bonus programs is relevant to plaintiff's bad-faith insurance claims. <u>Id.</u> (citing <u>Pochat</u>, 2008 WL 5192427, at *5-6). Because claims ratios and bonus programs are "inherently tied," documents containing that relevant information are discoverable.

Therefore, Mr. Rounds' motion to compel as to request nos. 12 and 13 is granted.

16

**4.     Request for Production No. 14**

This request seeks:

> All documents used, or available for use by any of the individuals
> described in Request 7 to assist or guide them in handling worker's
> compensation claims or supervising those who handle claims.  The
> scope of this request is January 1, 2010 to present.

See Docket No. 28, p. 16.

In its response, Hartford objects to this discovery request because:
it is undefined, vague, and ambiguous, the request is overly broad in
time, it seeks confidential information, it seeks irrelevant information,
and it is not proportional to the needs of the case.  Docket No. 52,
pp. 15-16.

This court has previously discussed the discoverability of claims
manuals.  See Hurley v. State Farm Mut. Auto Ins. Co., Civ. No. 10-4165-KES,
2012 WL 1600796, *5 (D.S.D. May 7, 2012).  In Hurley v. State Farm, the
plaintiff moved to compel discovery relating to his bad faith action against State
Farm.  Id. at *1.  Ultimately, the Hurley court ordered State Farm to produce
the entire Automobile Insurance Company's claims manual, finding that this
claims manual could lead to relevant information "relating to how UIM claims
are handled." Id. at *5.

Similarly, in Brown Bear v. Cuna Mut. Grp., the plaintiff's claims
manuals request was limited to the "How to file a total disability claim"
provision of the policy in dispute.  Brown Bear v. Cuna Mut. Grp., 266 F.R.D.
310, 329 (D.S.D. Nov. 5, 2009).  This court found that this information could

reasonably lead to evidence regarding how policy language was applied to different policyholders.  Id.

Although the scope of discovery is quite broad, "litigants seeking to compel discovery must describe[,] with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Woodmen of the World Life Ins. Society, No. 8:03-CV-165, 2007 WL 1217919, at *1 (citing Cervantes, 464 F.2d at 994).  The court finds that worker's compensation claims manuals are relevant to determine the processes followed by claims adjusters.  Additionally, worker's compensation manuals have a direct bearing on whether Hartford followed its own procedures and South Dakota law when processing Mr. Rounds' claim.  Thus, Mr. Rounds has established the threshold relevance of the requested documents.

In response, Hartford agreed to produce responsive internal confidential and proprietary claim practices and procedures for handling workers' compensation claims from 2015-2018.  Docket No. 52, p. 15.  Hartford concedes that "claim manuals" may be discoverable, but arbitrarily requesting eleven years of all documents available to handlers is overbroad.  Id. at 16.  However, in Hill v. Auto-Owners, this court stated that, "because plaintiffs' claim alleges a practice or policy of minimizing claims, evidence supporting that claim may well be found in documents outside the period when plaintiffs' specific claim for benefits was being handled."  Hill v. Auto-Owners, Civ. No. 14-5037-KES, 2015 WL 2092680, at *15 (D.S.D. May 5, 2015).  While Hartford may argue that the time frame is overly broad, this district has compelled

18

discovery of "claim manuals" and "training materials".  See Kirschenman v. Auto-Owners Ins., 280 F.R.D. 474, 486-87 (D.S.D. 2012) (finding relevant ten years of training materials).  As alleged by Mr. Rounds, these materials can shed light on whether the denial of Mr. Rounds' claim was an isolated incident or if the conduct involved was continuously repeated.

Accordingly, Mr. Rounds' motion to compel discovery as to request no. 14 is granted.

### 5.    Request for Production No. 15

This request seeks:

> Documents sufficient to identify all training or educational materials related to handling or supervising workers' compensation claims and made accessible to any of the persons described in Request 7.  The scope of this request is limited to documents accessible at any time from January 1, 2010 to present.

See Docket No. 28, p. 18.

In its response, Hartford makes the same objections to this discovery as it did for request no. 14: that the request is overly broad in time, seeks confidential information, seeks irrelevant information, and is not proportional to the needs of the case.  Docket No. 52, p. 17.

Despite these objections, South Dakota District Courts have held that training materials are relevant and subject to discovery.  In Signature Dev. LLC v. Mid-Continent Cas. Co., the court found that the request for all claims manuals, procedure guide materials, or training materials for claim handlers was relevant to proving a bad faith claim. Signature Dev. LLC v. Mid-Continent Cas. Co., 2012 WL 4321322, at

19

\*12.  Further, the <u>Signature Dev. LLC</u> court stated that training manuals are relevant to determine the process claim adjusters go through in determining whether coverage exists.  <u>Id.</u>  Also, the court held that training materials would have a direct bearing in determining whether a company followed its own procedures when it discontinued coverage.  <u>Id.</u>

Hartford has agreed to produce training materials for workers' compensation claims courses taken by the claim handler and her supervisor from July 2, 2015, until January 1, 2018, reasoning that Mr. Rounds' request is overly broad in scope.  Docket No. 52, p. 17.  However, as indicated above in section B(4), this district has compelled discovery of "training materials" over much longer periods of time.  <u>See Kirschenman,</u> 280 F.R.D. 474, 487 (D.S.D. 2012) (ordering production of training materials over ten-year period).  Thus, Hartford's argument that "plaintiff provides no explanation or argument regarding why eleven years of training material would show such a belief where three years would not," is misplaced.  Docket No. 52, p. 17.  The court agrees with Mr. Rounds that training materials are an important part of analyzing claim practices and performance evaluations.

Therefore, Mr. Rounds' motion to compel as to request no. 15 is granted and Hartford's request to limit that discovery is denied.

### 6.    Request for Production No. 16

This request seeks:

> [A]ll materials accessible to Christy Thomann or any person supervising her work, at any time during 2015-2017 related to any

of the following: a) South Dakota workers' compensation law, b) South Dakota claim handling standards, c) Insurer duties in connection with handling South Dakota workers' compensation claims, d) South Dakota bad faith law, or e) South Dakota unfair claim practices.

See Docket No. 28, p. 19.

Hartford objects to this discovery as overbroad, vague, and irrelevant, claiming that "Plaintiff makes no effort to explain why it believes there are additional documents Hartford will withhold despite Hartford's assurances it is fully responding to the request."  Docket No. 52, p. 18.  However, Mr. Rounds alleges that the information sought is relevant because insurers commonly provide claim personnel with these types of resources to educate them about state-specific duties for handling workers' compensation claims and various state prohibitions against unfair claim practices and bad faith liability.  Docket No. 28, p. 20.  Further, Mr. Rounds alleges that these materials are relevant to show Hartford's knowledge of those duties.  Id.

Hartford has failed to argue that this district, or any district, prohibits discovery of the requested materials.  In its short, two-paragraph response to this request, Hartford cites no law and proposes baseless, boilerplate objections to Mr. Rounds' request.  This district has repeatedly held that boilerplate objections fail to pass muster.  Kooima v. Zacklift Int'l. Inc., 209 F.R.D. 444, 446 (D.S.D. 2002).  ("Boilerplate objections are unacceptable.  The party resisting discovery must show specifically how each interrogatory or request for production is not

21

relevant or how each question is overly broad, burdensome, or oppressive."); see also Schultz, 2016 WL 3149686, at *7 (boilerplate general objections fail to preserve any objection at all).

Therefore, Mr. Rounds' motion to compel as to request no. 16 is granted.

### 7.    Request for Production Nos. 17, 18

These requests seek:

> No. 17: All deposition or trial testimony transcripts of any of your officers, and any of the persons described in Request 7, in any extra-contractual suit arising out of the handling of a worker compensation claim.  The scope of this request is January 1, 2010 to present.

> No. 18: Documents sufficient to identify the names, dates, and venues of each extracontractual suit filed against you, arising out of the handling of a worker compensation claim.  The scope of this request is January 1, 2010 to present.

See Docket No. 28, pp. 20, 21.

In response, Hartford objects to discovery of these requests because they are overbroad in time and geographic scope, irrelevant, vague, and not proportional to the needs of the case.  Docket No. 52, pp. 18-21.  The court disagrees.

As to request no. 17, this district has routinely compelled discovery of testimony transcripts given by claim personnel and their superiors in bad faith cases.  In Lyon v. Bankers Life and Cas. Co., the court compelled discovery of "[a]ny and all deposition transcripts or trial testimony transcripts of any of Defendant's officers or personnel."  Lyon, 2011 WL 124629, at *11-13.  The Lyon court reasoned that this

22

information is readily available to defendant and is very difficult, if not impossible, for plaintiff to obtain.  Id.  The piecemeal process of obtaining this information by plaintiff would be extremely costly and contrary to the cause of providing a "just, speedy, and inexpensive determination of every action . . . ."  Id.; FED. R. CIV. P. 1.

Additionally, in Leichtnam v. Am. Zurich Ins. Co., the court compelled discovery of "all deposition and trial transcripts of any officer, or individual identified in Request No. 2, in any extra-contractual suit arising out of the handling of a worker's compensation claim." Leichtnam v. Am. Zurich Ins. Co., No. 5:15-CV-05012-JLV, 2018 WL 4701353, at *6-7 (D.S.D. Sept. 20, 2018).  The Leichtnam court held that this request was relevant and could be used for the purposes of: (1) revealing similar events of claim processing by this defendant, (2) discovery of prior adverse rulings against this defendant on the same issues being disputed in this case, (3) revealing prior declarations by defendant's personnel regarding the interpretation of claims manuals, other claims protocol, bonus or award programs, or claims quality assurance, (4) revealing internal procedures for other relevant conduct in handling long-term care policies, and (5) cross-examination of defendant's employees disclosed as witnesses in this action.  Id. at *7. Here, Mr. Rounds makes a similar request to what was compelled in both the Lyon and Leichtnam cases.  Therefore, following this court's

precedent, request no. 17 is relevant and proportional to the needs of the case.

As to request no. 18, this district has also routinely compelled discovery of prior lawsuits for bad faith and extracontractual claims. Again, in Lyon, the court held that material from other litigation "is relevant to the defendants' intentions as to . . . coverage, as it will shed light on how the defendants have approached other [coverage] issues and used exclusionary clauses." Lyon, 2011 WL 124629, at *13 (quoting Owens-Corning Fiberglass Corp v. Allstate Ins. Co., 660 N.E.2d 767, 767 (Ohio Ct. Com. Pl. 1993)). Judges in this district have in numerous cases overruled objections to similar requests and required discovery of documents from other litigation. Id.; See Beyer v. Medico Ins. Grp., 266 F.R.D. 333, 338 (D.S.D. Nov. 13, 2009) ("Medico is . . . ordered to produce all documents . . . . Production is to include litigation documents, including but not limited to complaints, motions, court orders, and the like."); Brown Bear, 266 F.R.D. at 326 ("Because the [prior litigation] documents Brown Bear requests may reveal that Cuna's alleged conduct in this case occurs frequently and as a result risks harm to many, the requested documents may be relevant to demonstrate reprehensibility, which is a proper consideration in a punitive damages determination.").

To require each plaintiff to go through an identical and expensive discovery process, while defendant has knowledge of other cases in

24

litigation brought against it on similar types of claims, places defendant at an unusually significant advantage over this individual plaintiff litigant. <u>Lyon</u>, 2011 WL 124629, at *14.  Mr. Rounds alleges that discovery of prior lawsuits and extracontractual claims would be relevant to show similar behavior toward other claimants, rulings on similar legal issues, and defendants' knowledge of wrongfulness.  Docket No. 28, p. 22.  The court agrees.

In response, Hartford has agreed to produce the transcript of a responsive deposition given by Mr. Wagenknecht in 2018, the only deposition previously given by any claim handler assigned to Mr. Rounds' claim, and a list of extracontractual workers compensation lawsuits filed against all Hartford entities in South Dakota from 2015 to present. Docket No. 52, p. 19.  However, this district has never limited discovery of trial depositions and transcripts to just the claims handlers assigned to the plaintiff, nor has Hartford cited any case that holds this.  Further, this district has held discovery of other lawsuits is not limited to just South Dakota claims.  <u>See</u> <u>Tovares,</u> 2020 WL 4740455, at *10 (discovery of other lawsuits not limited to South Dakota claims); <u>McElgunn v. CUNA Mut. Grp.</u>, No. Civ. 06-5061-KES, 2008 WL 11506002, at *4 (D.S.D. Apr. 3, 2008) (same).

Therefore, Hartford's proposal to limit this discovery request is denied, and Mr. Rounds' motion to compel as to request nos. 17 & 18 is granted.

**8.    Request for Production No. 19**

This request seeks:

> All documents related to any regulatory investigations or actions
> involving your handling or processing of workers' compensation
> claims.  The scope of this request is January 1, 2010 to present.

See Docket No. 28, p. 23.

In its response, Hartford objects to this discovery request because

it is overbroad in time and scope, irrelevant, and not proportional to the

needs of the case.  Docket No. 52, p. 22-23.  The court disagrees.

This request resembles the one made in Schultz v. Sentinel Ins.

Co.  In Schultz, the plaintiff requested any and all documents relating to

regulatory actions and did not limit the request to only South Dakota

actions.  Schultz, 2016 WL 3149686, at *12.  Like Hartford, the

defendants in Schultz objected to this request as irrelevant, overly broad,

unduly burdensome, and attempted to self-limit the request to only

actions within the state of South Dakota.  Id.  In response, the Schultz

court stated that information about regulatory actions and consumer

complaints is not a new issue in bad faith litigation in this district.  Id. at

13; see also Lillibridge v. Nautilus Ins. Co., No. CIV. 10-4105-KES, 2013

WL 1896825, at *13 (D.S.D. May 3, 2013); Lyon, 2011 WL 124629 at

*15; Beyer, 266 F.R.D. at 339.  Further, the Schultz court held that this

information was relevant for the same reason the information about past

bad faith claims against defendants is relevant: it may tend to show a

pattern or practice of business conduct by defendants that shows it

26

denied claims it knew were covered, or that it acted with reckless disregard in denying such claims.  Id.  Ultimately, the Schultz court granted the plaintiff's motion to compel, and denied the defendant's attempt to limit it to only South Dakota actions.  Id.

Therefore, following this court's precedent in Schultz, Mr. Rounds' motion to compel at to request no. 19 is granted, and Hartford's attempt to self-limit discovery of this request to only actions within South Dakota is denied.

### 9.   Request for Production No. 23

This request seeks:

> All company newsletters available to any of the workers' compensation claim personnel identified in Request 7 since January 1, 2010.

See Docket No. 28, p. 25.

In its response, Hartford objects to discovery of this request because it is overbroad, vague, irrelevant, and not proportional to the needs of the case. Docket No. 52, pp. 23-24.  Contrary to these objections, this district has repeatedly held that company newsletters are a proper subject of discovery.  In Brown Bear v. Cuna Mut. Group, the court held that a request for "[a]ny and all company newsletters" was not vague, overly broad, or unlimited in time or scope because it sought a specific subsection of files in the defendant's possession.  Brown Bear, 266 F.R.D. at 324.

Similarly, in Lyon v. Bankers Life and Cas. Co., the court stated that newsletters and other publications of a defendant have been a subject of

discovery orders in the past in this district.  Lyon, 2011 WL 124629, at *16 (quoting McElgunn v. CUNA Mut. Grp., 5:06-cv-05061-KES (Docket No. 84, ¶ 7) (D.S.D. Jan. 31, 2007) ("Newsletters and presentations . . . .  This request is granted to the extent that these newsletters and presentations relate to bonuses or awards programs for employees.").  In Lyon, the court compelled discovery of "[a]ny and all company newsletters designed to inform employees of industry or company news," stating that these newsletters may reasonably lead to the development of admissible evidence and the request is properly limited in time.  Id. at *15-16.  Mr. Rounds has sufficiently alleged that the purpose of this discovery is to determine whether there is an improper company culture that rewards reductions in claims payouts, and internal programs and initiatives designed to artificially decrease claim payout.  Docket No. 28, p. 25.  Therefore, following this court's precedent, the company newsletters that Mr. Rounds seeks are relevant.

Further, in both Brown Bear and Lyon, the scope of the request was company newsletters for the preceding nine and ten years, respectively.  See Brown Bear, 266 F.R.D. at 324; Lyon, 2011 WL 124629, at *16.  Therefore, Mr. Rounds' request for eleven years of company newsletters is reasonable considering what this district has determined to be appropriate for discovery.

Because the company newsletters that Mr. Rounds requests are relevant and not overly broad in scope, Mr. Rounds' motion to compel discovery as to request no. 23 is granted.

### 10.    Request for Production No. 24

This request seeks:

> All documents made available to train, guide, or assist any of the
> individuals described in Request 7 with respect to: a) unfair claims
> practices; b) good faith or bad faith claim handling; c) wrongful
> claims handling; d) extra-contractual suits or damages[.]  The
> scope of this request is January 1, 2010 to present.

See Docket No. 28, p. 26.

For the same reasons outlined in Section B(5), Mr. Rounds' motion to

compel discovery as to request no. 24 is granted.

### 11.    Request for Production No. 26

This request seeks:

> Any and all documents relating to complaints made to the South
> Dakota Division of Insurance or its Director involving handling of
> workers' compensation claims by either defendant or by Hartford
> Fire or Hartford Accident and Indemnity since January 1, 2010.

See Docket No. 28, p. 27.

In its response, Hartford objects to discovery of this request because it

includes parties, namely Hartford Fire and Hartford Accident and Indemnity,

that are not parties to the suit, and no responsive documents exist.

The discovery request for transcripts, complaints made to state

insurance departments, and regulatory actions outside South Dakota has been

found to be relevant and discoverable and are historically required to be

produced by this court.  Collins v. St. Paul Fire & Marine Ins. Co., No. 5:15-CV-

05047-JLV, 2016 WL 5794722, at *6 (D.S.D. Sept. 30, 2016).  See generally

Lyon, 2011 WL 124629; Nye, 2013 WL 3107492; Lillibridge, 2013 WL 1896825.

In Beyer v. Medico Ins. Group, the court held that "[t]he documents in

[defendant's] possession relating to complaints made to state insurance regulators undoubtedly 'bear on' litigation over a claim of bad faith denial of benefits." Beyer, 266 F.R.D. at 339 (citing Oppenheimer Fund Inc., 437 U.S. at 351).  While Hartford alleges that no responsive documents exist, it has no bearing on whether these documents are relevant and a proper subject of discovery.  Additionally, Hartford has not argued that this request is overly burdensome.  The party resisting production of discovery bears the burden of establishing lack of relevancy or that complying with the request would be unduly burdensome.  Lyon, 2011 WL 124629, at *6 (quoting St. Paul Reinsurance Co. v. Commercial Financial Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000)).  Therefore, Mr. Rounds' motion to compel as to Request No. 26 is granted, to the extent these documents exist, or are later determined to exist.

### 12.    Request for Production No. 28

This request seeks:

> [A]ll documents showing your document retention/destruction policies with respect to documents related to workers' compensation claims or made accessible to workers' compensation claim personnel.  The scope of this request is January 1, 2015 to present.

See Docket No. 28, p. 28.

In its response, Hartford objects to discovery of this request because the destruction or spoliation of documents is not at issue in this case and the requested materials are not relevant.  Docket No. 52, pp. 25-26.  Mr. Rounds cites to Collins v. St. Paul Fire & Marine Ins. Co. to assert that South Dakota District Courts have overruled these objections and enforced discovery of

record retention procedures in bad faith actions.  Docket No. 28, p. 28.  This argument is incorrect.  As Hartford argued, the court in <u>Collins</u> compelled responses to interrogatories related to persons most knowledgeable of how defendants kept and maintained records, rather than the actual retention or destruction policies of the company.  <u>Collins</u>, 2016 WL 5794722, at *4.

While Mr. Rounds has not cited any additional cases showing this request is enforced in this district, "[a] party seeking discovery is merely required to make a threshold showing of relevance, which is more relaxed than the showing required for relevance in the context of admissibility." <u>Klynsma v. Hydradyne, LLC</u>, No. CIV. 13-5016-JLV, 2015 WL 5773703, at *16 (D.S.D. Sept. 30, 2015).  Mr. Rounds alleges these documents are relevant because they effectively provide a listing or index of all categories of documents related to workers compensation, and how long they are kept before being destroyed. Docket No. 28, pp. 28-29.  Therefore, Mr. Rounds has met the threshold showing of relevance for request no. 28, and thus, the motion to compel is granted.

### 13.    Request for Production No. 29

This request seeks:

> [A]ll documents showing any agreement in which any insurance business (other than defendants) may be liable to satisfy all or part of any judgment in this action or to indemnify or reimburse either defendant for payments made to satisfy the judgment.  This includes, but is not limited to, liability coverage or reinsurance agreements providing any sort of indemnification to either defendant, or any other Hartford entity, for either contractual or extra-contractual payments.

<u>See</u> Docket No. 28, p. 29.

31

In its response, Hartford objects to this discovery request because it is overbroad, falls outside the scope of Federal Rule Civil Procedure 26(a)(1)(A)(iv), inadmissible under Federal Rule of Evidence 411, and, to the extent an insurance policy could apply, its deductible is so high as to make it practically inapplicable to this case.  Docket No. 52, pp. 26-28.

First, Hartford's Fed. R. Evid. 411 argument is misplaced because the Federal Rules of Evidence do not apply to discovery disputes.  Fed. R. Evid. 411 addresses admissibility of liability insurance at trial to show liability, which is not the issue that is before the court.  The rules of discovery specifically mandate discovery of such information.  Rule 26 specifically requires parties to disclose the existence of insurance that may cover part or all of a plaintiff's damages and to provide a copy of the policy.  See FED. R. CIV. P. 26(a)(1)(A)(iv). If such an insurance policy exists, Hartford should have already voluntarily provided it to Mr. Rounds with its initial disclosures.  Id.

Next, Hartford cites to a Southern District of Indiana case, Cummins, Inc. v. Ace Am. Ins. Co., which holds reinsurance contracts are not subject to Rule 26(a)(1)(A)(iv) mandatory initial disclosure requirements.  Cummins, Inc. v. Ace Am. Ins. Co., No. 1:09-cv-00738-JMS-DML, 2011 U.S. Dist. LEXIS 4568, at *30-31 (S.D. Ind. Jan. 14, 2011).  However, this case is the exception, not the standard.  Most federal courts across the country have determined the reference in Rule 26(a)(1)(A)(iv) to "any" insurance agreement includes reinsurance agreements.  Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp., No. 14-CV-4717 (JB), 2016 WL 2858815, *15 (E.D.N.Y. May

16, 2016); see also Suffolk Fed. Credit Union v. Cumis Ins. Soc., Inc., 270 F.R.D. 141, 142 (E.D.N.Y. 2010) (holding reinsurance agreements fit within the plain language of this rule when the primary insurer is named as a party); SavaSeniorCare, LLC v. Starr Indem. & Liab. Co., Civil Action No. 1:18-CV-1991-SDG, 2019 WL 9806574, at *2 (N.D. Ga. Oct. 31, 2019) (holding there is no general Rule 26 exception to the production of a reinsurance contract and courts have largely concluded that such contracts are discoverable).

Similarly, the District of South Dakota holds reinsurance agreements are a proper subject of discovery.  In Perovich v. CUNA Mut. Group, this court compelled defendants to "provide all of the insurance policies under which it may be liable to satisfy all or part of a possible judgment in this action, or to indemnify or reimburse for payments made to satisfy the judgment."  Perovich v. CUNA Mut. Grp., No. CIV. 09-5060, 2009 WL 4421253, at *3 (D.S.D. Nov. 25, 2009).  Likewise, in Lyon, the court held that any reinsurance policy held by defendants is discoverable under Rule 26(a)(1)(A)(iv) and "the relationship between [defendants] and its reinsurers is relevant to determining if there is a pattern of conduct or an isolated incident of denial of plaintiff's . . . coverage."  Lyon, 2011 WL 124629, at *18.  Therefore, Mr. Rounds' request does not fall outside the scope of Rule 26, it is not overbroad, and it is relevant.

Addressing Hartford's objection that, to the extent an insurance policy applies, its deductible is so high as to make it practically inapplicable to this case, Hartford does not cite to any legal authority that holds this to be an exception to discovery under Rule 26.  Rule 26(a)(1)(A)(iv) specifically requires a

33

party to disclose, without a formal request, "*any* insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Lyon, 2011 WL 124629, at *17 (emphasis added). Therefore, without caselaw to support their assertion, Hartford's objection lacks merit.

Thus, Mr. Rounds' motion to compel as to request no. 29 is granted.

### 14.    Request for Production No. 30

This request seeks:

> [C]opies of any agreements between either defendant or any other Hartford entity for claim handling or claim administration services, including but not limited to copies of the amended and restated Services and Cost Allocation agreement. The scope of this request is limited to agreements effective at any time during the years 2015-2018.

See Docket No. 28, p. 30.

In its response, Hartford objects to the discovery of this request because it is irrelevant and not proportional to the needs of the case. Docket No. 52, p. 28. Further, Hartford argues that the sole purpose of this request is "to identify the entity that actually handled Rounds' claim," and that the issue was resolved a year ago. Id. While that is one of the purposes Mr. Rounds alleges, Mr. Rounds also states that any service and cost sharing agreements between Hartford and their entities will shed light onto which entities were involved in Mr. Rounds' claim, and in what capacity. Docket No. 28, p. 31. Thus, Mr. Rounds has sufficiently met his threshold showing of relevance for this court to compel discovery as to this request.

34

Hartford, in its short one-paragraph response, fails to argue why it would be burdensome to produce this request and generally objects to this request as irrelevant.  As stated previously, "Boilerplate objections are unacceptable.  The party resisting discovery must show specifically how each interrogatory or request for production is not relevant or how each question is overly broad, burdensome or oppressive."  Nye, 2013 WL 3107492, at *8 (internal quotation omitted, cleaned up).  Therefore, Mr. Rounds' motion to compel as to request no. 30 is granted.

### 15.    Request for Production No. 33

This request seeks:

> [C]opies of the employee handbook(s) issued by the Hartford entity or entities that paid wages to Christy Thomann and any person supervising her work. The scope of this request is limited to the years 2015-2018.

See Docket No. 28, p. 31.

In its response, Hartford objects to this discovery request because it is irrelevant and unclear what is meant by "employee handbook" or what materials Mr. Rounds assumes would be in the handbook.  Docket No. 52, p. 29.  These objections are without merit.  As Mr. Rounds correctly alleges, there have been various cases involving Hartford that have referenced the term "employee handbook."  See Wadford v. Hartford Fire Ins. Co., CIV. A. 3:87-2872-15, 1988 WL 492127, at *5 (D.S.C. Aug. 11, 1988) (nothing contained in plaintiff's handbook that limited Hartford's ability to terminate her at-will); Hartranft v. Hartford Life & Acc. Ins. Co., No. 3:01CV1870 (JBA), 2004 WL 2377228, at *4 (D. Conn. Sept. 30, 2004); Miller v. Hartford Fire Ins. Co., 652

F. Supp. 2d 220, 225 (D. Conn. 2009) ("The Hartford employee handbook
includes a progressive discipline policy, with the following steps: (1) verbal
warning, (2) written warning, (3) final written warning, (4) termination.").
Clearly, given these prior cases, Hartford is aware of what is meant by this
request.

Further, Mr. Rounds has sufficiently met his threshold showing of
relevance.  As alleged, Mr. Rounds believes these materials are relevant to
understand who employed or directed the activities of the claim handler,
Mr. Thomann.  Docket No. 28, p. 32.  In response, Hartford does not offer any
argument in opposition to this assertion.

Therefore, because this request is relevant and clear, given prior case law
involving Hartford, Mr. Rounds' motion to compel as to request no. 33 is
granted.

### 16.    Request for Production No. 34

This request seeks:

> [C]opies of all emails or letters sent by Christy Thomann to any
> person or entity related to her handling of a workers' compensation
> claim that includes the words "Hartford Financial Services Group,
> Inc." below her signature block.  The scope of this request is
> limited to emails or letters sent at any time during the period of
> July 2015 to January 2018.

See Docket No. 28, p. 32.

In its response, Hartford objects to this discovery request because it is
irrelevant, overbroad, burdensome, not proportional to the needs of the case,
and seeks documents that may be privileged.  Docket No. 52, pp. 30-31.
Hartford argues they have provided Mr. Rounds with all emails Ms. Thomann

36

sent during his claim, all of which affix a signature block for Hartford Financial Services Group, Inc.  Id. at p. 30.  Thus, Hartford states that whether they provide fifty or fifty thousand emails, the result will be the same; all of Ms. Thomann's emails contained the HFSG signature block.  Id.

However, Mr. Rounds alleges that this request is relevant because Hartford continues to deny that Ms. Thomann was an employee of HFSG despite the use of the HFSG signature block.  Docket No. 28, p. 33.  In response to Hartford's objections, Mr. Rounds has expressed that he will accept a "search for all responsive emails along with a report or screen shot showing how many responsive emails were identified in the search."  Docket No. 28, p. 33.  Namely, Hartford would not need to produce any of the actual emails but would rather show the exact number of times Ms. Thomann used the HFSG signature block in her communications.  Id.  The court finds this proposed method of discovery by Mr. Rounds to be sufficient; it will protect the privileged and proprietary information contained in the emails, prevent Hartford from having to produce and redact the thousands of emails requested, and will allow Mr. Rounds to obtain the relevant information he seeks to acquire.

Therefore, Mr. Rounds' motion to compel as to Request No. 34 is denied, and Mr. Rounds request to obtain a report or screen shot showing how many of Ms. Thomann's emails contained the HFSG signature block, stated in Docket No. 28, p. 33, is granted.

### 17.   Request for Production No. 36

This request seeks:

> [C]opies of all documents that you contend show Christy Thomann
> was an employee of Hartford Casualty at any time during the years
> 2015-2018.

See Docket No. 28, p. 34.

In its response, Hartford objects to this discovery request because it is
harassment, irrelevant, and no responsive documents exist.  Docket No. 52,
p. 31.  The court agrees.  Mr. Rounds has failed to make a threshold showing
of relevance for this court to compel Hartford to produce discovery.
Mr. Rounds alleges that this information will be used to further prove that
Hartford Casualty handled the claim, and that Christy Thomann was the claim
handler.  Docket No. 85, p. 40.  However, the information sought in this
request is duplicative of what will be discovered in Request Nos. 9, 10, and 11
discussed in Section B(2).  In those requests, the court granted the motion to
compel to provide all compensation records of individuals who worked on
Mr. Rounds claim.  Within those requests are unredacted W-2s for Christy
Thomann and Kevin Wagenknecht, which will ultimately allow the plaintiffs to
determine who Ms. Thomann's employer was.

Therefore, Mr. Rounds' motion to compel as to Request No. 36 is denied.

### C.   Plaintiff's Requests for Sanctions

Mr. Rounds asks the court for an award of attorneys' fees for bringing
this motion to compel under Federal Rule of Civil Procedure 37(a)(5)(A).  That
rule states:

(5) *Payment of Expenses; Protective Orders.*

    (A) *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).*  If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising the conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

        (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

        (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

        (iii) other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(a)(5)(A).  To satisfy this hearing requirement, the court "can consider such questions on written submissions as well as on oral hearings." FED. R. CIV. P. 37(a)(4) advisory committee's note to 1993 amendment (regarding Rule 37(a)(4), which has since been renumbered as Rule 37(a)(5)).

Here, the court has granted, in part, Mr. Rounds' motion to compel responses to specific discovery requests.  Therefore, Mr. Rounds meets the first criterion of Rule 37(a)(5)(A).  And Mr. Rounds first raised the issue of Rule 37 costs and attorneys' fees in his motion to compel.  See Docket No. 28, p. 35. Therefore, Hartford had an opportunity to be heard when it responded in writing to Mr. Rounds' motion.  With these requirements satisfied, the court examines whether any of the exceptions outlined in Rule 37(a)(5)(A)(i)-(iii) apply.  If none of the exceptions apply, the court must award costs.  FED. R. Civ. P. 37(a)(5)(A).

First, Mr. Rounds must not have filed the motion before attempting in good faith to obtain the disclosure or discovery without court action. Mr. Rounds submitted to the court documentation showing repeated attempts to resolve the discovery disputes without involving the court, and Hartford has not alleged any contrary facts or information. Therefore, the court finds that Mr. Rounds did not file this motion to compel before attempting in good faith to resolve its discovery disputes with Hartford.

Next, the court considers whether Hartford's' non-disclosure, response, or objection was substantially justified.  Hartford has presented no information or evidence justifying its repeated delays and non-disclosure of the documents at issue in this motion to compel.  "Because defendant ha[s] no substantial justification for refusing to disclose these documents" (Bone Shirt v. Hazeltine, No. CIV. 01-3032-KES, 2003 WL 27384630, at *3 (D.S.D. Aug. 15, 2003)), the court finds this second exception does not bar Mr. Rounds recovery of costs.

Lastly, Hartford has not identified any other circumstances that make the award of expenses on this motion to compel unjust.  Therefore, there is "no substantial justification for [Hartford's] incomplete and untimely responses" (Heil v. Belle Starr Saloon & Casino, Inc., No. Civ. 09-5074-JLV, 2011 WL 13353218, at *4 (D.S.D. Aug. 3, 2011)), and expenses are required by Rule 37(a)(5)(A).  Mr. Rounds' request for expenses related to the motion to compel is partially granted.  Mr. Rounds is directed to submit an affidavit of his costs and attorney's fees associated with this motion as to the requests that were granted within 28 days of this order along with an accounting of attorney hours

40

and description of what those hours represent in terms of attorney work. Hartford shall have 21 days thereafter to file objections to the hours or amount of fees requested.  Mr. Rounds shall have 14 days thereafter to file a reply.

## CONCLUSION

Based on the foregoing facts, law, and analysis, it is hereby:

ORDERED that the motion to compel [Docket No. 27] filed by plaintiff Tim Rounds is granted as to requests for production 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 23, 24, 26, 28, 29, 30, 33 and denied as to requests for production 34 and 36.  Defendants, The Hartford, Hartford Financial Services, Inc., and Hartford Casualty Ins. Co., shall provide within 15 days of the date of this order, the following materials:

1. The entire personnel files and human resources files for each person who handled or participated in handling or making decisions regarding any aspect of Tim Rounds' claim, as well as those persons who supervise those individuals or are in the direct chain of command above them, up to the senior-most person in the chain of command with authority over claims.  Redact social security numbers, home street addresses, bank account numbers, or personal health information.

2. Documents sufficient to show all compensation paid to any of the individuals described in Request 7.  The scope of this Request is January 1, 2010, to January 1, 2018.

3. All documents made available to inform any of the personnel described in Request 7 of the manner in which they can expect to earn increases in compensation, or the manner in which they are evaluated for compensation.  The scope of this request is January 1, 2010, to present.

4. All documents which would reflect that the amount paid in claims, is or has been considered in any manner when evaluating any of the compensation provided to any of the personnel described in Request 7, whether it be through average claim costs, loss ratios, combined ratios, underwriting profit, or any other metric.  The scope of this request is January 1, 2010, to present.

5. All documents relating to goals, targets, or objectives set for any of the individuals described in Request 7, or for workers compensation claims in general.  The scope of this request is January 1, 2010, to present.

6. All documents relating to initiatives, programs, or other efforts to affect average claim costs (indemnity), loss ratios, combined ratios, or underwriting profit for worker's compensation claims from January 1, 2010, to present.  This request does not include documents from individual claim files relating solely to specific individual claimants. This does not include documents that are solely related to efforts to increase sales.

7. All documents used, or available for use by any of the individuals described in Request 7 to assist or guide them in handling worker's compensation claims or supervising those who handle claims. The scope of this request is January 1, 2010, to present.

8. Documents sufficient to identify all training or educational materials related to handling or supervising workers compensation claims and made accessible to any of the persons described in Request 7. The scope of this request is limited to documents accessible at any time from January 1, 2010, to present.

9. All materials accessible to Christy Thomann or any person supervising her work, at any time during 2015-2017 related to any of the following: a) South Dakota workers' compensation law, b) South Dakota claim handling standards, c) Insurer duties in connection with handling South Dakota workers' compensation claims, d) South Dakota bad faith law, or e) South Dakota unfair claim practices.

10. All deposition or trial testimony transcripts of any of your officers, and any of the persons described in Request 7, in any extra-contractual suit arising out of the handling of a worker compensation claim. The scope of this request is January 1, 2010, to present.

11. Documents sufficient to identify the names, dates, and venues of each extracontractual suit filed against you, arising out of the handling of a worker compensation claim. The scope of this request is January 1, 2010, to present.

12.    All documents related to any regulatory investigations or actions involving your handling or processing of workers compensation claims.  The scope of this request is January 1, 2010, to present.

13.    All company newsletters available to any of the worker's compensation claim personnel identified in Request 7 since January 1, 2010.

14.    All documents made available to train, guide, or assist any of the individuals described in Request 7 with respect to: a) unfair claims practices; b) good faith or bad faith claim handling; c) wrongful claims handling; and d) extra-contractual suits or damages.  The scope of this request is January 1, 2010, to present.

15.    Any and all documents relating to complaints made to the South Dakota Division of Insurance or its Director involving handling of workers' compensation claims by either defendant or by Hartford Fire or Hartford Accident and Indemnity since January 1, 2010.

16.    All documents showing your document retention/destruction policies with respect to documents related to workers' compensation claims or made accessible to worker's compensation claim personnel. The scope of this request is January 1, 2015, to present.

17.    All documents showing any agreement in which any insurance business (other than defendants) may be liable to satisfy all or part of any judgment in this action or to indemnify or reimburse either defendant for payments made to satisfy the judgment.  This includes,

44

but is not limited to, liability coverage or reinsurance agreements providing any sort of indemnification to either defendant, or any other Hartford entity, for either contractual or extra-contractual payments.

18.    Copies of any agreements between either defendant or any other Hartford entity for claim handling or claim administration services, including but not limited to copies of the amended and restated Services and Cost Allocation agreement.  The scope of this request is limited to agreements effective at any time during the years 2015-2018.

19.    Copies of the employee handbook(s) issued by the Hartford entity or entities that paid wages to Christy Thomann and any person supervising her work.  The scope of this request is limited to the years 2015-2018.

20.    A search for all responsive emails of Christy Thomann along with a report or screen shot showing how many responsive emails contain the Hartford Financial Services Group, Inc. signature block.

ORDERED that Mr. Rounds shall be entitled to partial attorneys' fees for bringing this motion to compel.  Mr. Rounds shall file an affidavit with proof of service setting forth the time reasonably spent on this motion, the hourly rate requested for attorneys' fees and costs, and any factual matters pertinent to the motion for attorneys' fees within 28 days of this order.  Defendants shall file any and all objections to the allowance of fees within 21 days after receipt of service of Mr. Rounds' motion and affidavit.  Defendants may, by counter

affidavit, controvert any of the factual matters contained in Mr. Rounds' motion and may assert any factual matters bearing on the award of attorney's fees. D.S.D. LR 54.1(C).  Mr. Rounds shall have 14 days thereafter to file a reply.

DATED September 13, 2021.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge